IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
No. 23-1544

**VPR BRANDS, LP,**
*Plaintiff-Appellee*
v.

**SHENZHEN WEIBOLI TECHNOLOGY CO. LTD., YLSN DISTRIBUTION LLC, ECTO WORLD LLC, SAFA GOODS LLC, D&A DISTRIBUTION LLC, UNISHOW (U.S.A.), INC., SV3 LLC, KINGDOM VAPOR INC.,**
*Defendants-Appellants*

———————————

Appeal from the United States District Court for the Southern District of Florida
in Case No. 9:22-cv-81576-AMC, Judge Aileen M. Cannon

———————————

**APPELLANTS' PRINCIPAL BRIEF**

———————————

Carrie Shufflebarger
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, OH 45202
Phone: 513.352.6678
Fax: 513.241.4771
Carrie.Shufflebarger@ThompsonHine.com

Eric N. Heyer
Joseph A. Smith
Meixuan (Michelle) Li
THOMPSON HINE LLP
1919 M Street NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
Eric.Heyer@ThompsonHine.com
Joe.Smith@ThompsonHine.com
Michelle.Li@ThompsonHine.com

*Counsel for Defendants-Appellants*

## FEDERAL CIRCUIT RULE 47.4 CERTIFICATE OF INTEREST

No. 23-1544

The undersigned counsel of record certifies the following:

**1.      The full name of every entity represented in this case by me is:**

Shenzhen Weiboli Technology Co. Ltd., YLSN Distribution LLC, ECTO

World LLC, D&A Distribution LLC, Unishow (U.S.A.), Inc., SV3 LLC, and

Kingdom Vapor Inc.

**2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A

**3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

N/A

**4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:**

Thompson Hine LLP; Eric N. Heyer; Carrie Shufflebarger; Joseph A. Smith;

Meixuan (Michelle) Li; Anna Stressenger; and Krupa Patel

McDowell Hetherington LLP; Tucker C. Motta

                    /s/ Eric N. Heyer
                    Eric N. Heyer

i

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION.....................................................2

STATEMENT OF ISSUES ...................................................................2

STATEMENT OF THE CASE ..............................................................2

    I.    FEDERAL REGULATORY FRAMEWORK GOVERNING ELECTRONIC CIGARETTES...................................................2

    II.    DISTRICT COURT PROCEEDINGS....................................5

        A.    VPR's Complaint and Motion for Preliminary Injunction ........5

        B.    The Evidentiary Hearing ...............................................6

            1.    VPR's ELF-Brand Electronic Cigarettes........................7

            2.    Defendants' Expert Testimony .......................................7

        C.    The District Court's Order .................................................9

SUMMARY OF ARGUMENT .............................................................10

STANDARD OF REVIEW ..................................................................11

ARGUMENT ........................................................................................11

    I.    THE UNLAWFUL USE DOCTRINE HAS BEEN WIDELY ADOPTED BY ARTICLE III COURTS ...........................................11

    II.    THE LAWFUL USE REQUIREMENT IS PROPERLY APPLIED TO THE UNDISPUTED FACTS HERE...........................................16

    III.    ADOPTION AND APPLICATION OF THE UNLAWFUL USE DOCTRINE IS CONSISTENT WITH THE FDCA..........................22

CONCLUSION ....................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ...........................................................21

*Allergan United States v. Imprimis Pharms., Inc.*,
No. 17-cv-01551, 2017 U.S. Dist. LEXIS 223117 (C.D. Cal. Nov.
14, 2017) ........................................................................................25

*Altria Group, Inc. v. Good*,
555 U.S. 70 (2008).........................................................................25

*Am. First Fed., Inc. v. Lake Forest Park, Inc.*,
198 F.3d 1259 (11th Cir. 1999) ......................................................23

*AOP Ventures, Inc. v. Steam Distrib., LLC*,
EDCV 15-1586-VAP (KKx), 2016 U.S. Dist. LEXIS 193035 (C.D.
Cal. 2016), *reconsideration granted in part and vacated on other
grounds*, 2016 U.S. Dist. LEXIS 202438 (C.D. Cal. Dec. 27, 2016)................13

*AstraZenca LP v. Breath Ltd.*,
542 F. App'x 971 (Fed. Cir. 2013) ..................................................11

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015).......................................................................20

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001).......................................................................24

*Craft Kratom Lab, Inc. v. Mancini*,
No. 11-cv-80987, 2013 U.S. Dist. LEXIS 105852 (S.D. Fla. July
29, 2013) ........................................................................................12

*CreAgri, Inc. v. USANA Health Sciences, Inc.*,
474 F.3d 626 (9th Cir. 2007) ..........................................................12

*Curling v. Raffensperger*,
50 F.4th 1114 (11th Cir. 2022) .......................................................11

*Davidoff Extension S.A. v. Davidoff Int'l, Inc.*,
    612 F. Supp. 4 (S.D. Fla. 1984) ...........................................................13

*Dessert Beauty, Inc. v. Fox*,
    617 F. Supp. 2d 185 (S.D.N.Y. 2007) ....................................13, 19, 25

*Ellis v. C.R. Bard, Inc.*,
    311 F.3d 1272 (11th Cir. 2002) ........................................................22

*Erva Pharm., Inc. v. Am. Cyanamid Co.*,
    755 F. Supp. 36 (D.P.R. 1991) ...............................................13, 19, 25

*FN Herstal SA v. Clyde Armory, Inc.*,
    838 F.3d 1071 (11th Cir. 2016) ...................................................*passim*

*Gray v. Daffy Dan's Bargaintown*,
    823 F.2d 522 (Fed. Cir. 1987) ..........................................................12

*Healthpoint, Ltd. v. Ethex Corp.*,
    273 F. Supp. 2d 817 (W.D. Tex. 2001) ............................................23

*Hi-Tech Pharmaceuticals, Inc. v. Dynamic Sports Nutrition, LLC*,
    No. 16-cv-00949, 2020 WL 10728951 (N.D. Ga. Jan. 10, 2020) .................9, 15

*I&I Hair Corp. v. Beauty Plus Trading Co.*,
    No. 3:20-cv-02719-M, 2021 U.S. Dist. LEXIS 168620 (N.D. Tex.
    July 13, 2021)................................................................................14

*Keller v. Strauss*,
    480 F. App'x 552 (11th Cir.) .............................................................22

*Nicopure Labs, LLC v. FDA*,
    944 F.3d 267 (D.C. Cir. 2019).............................................................4

*Nitro Leisure Prods., LLC v. Acushnet Co.*,
    341 F.3d 1356 (Fed. Cir. 2003) ....................................................2, 11

*NYcityVan, LLC v. Thomas*,
    501 F. Supp. 3d 145 (E.D.N.Y. 2020) ....................................13, 19, 20

*Panduit Corp. v. All States Plastic Mfg. Co.*,
    744 F.2d 1564 (Fed. Cir. 1984) ........................................................11

*Perry v. H.J. Heinz Co. Brands, L.L.C.*,
    994 F.3d 466 (5th Cir. 2021) ...............................................................14

*Plant Food Sys. v. AgroSource, Inc.*,
    No. 16-cv-80326, 2016 U.S. Dist. LEXIS 124185 (S.D. Fla. Sept.
    12, 2016) .............................................................................................12

*PlayNation Play Sys., Inc. v. Velex Corp.*,
    924 F.3d 1159 (11th Cir. 2019) ..........................................................20

*Roor Int'l BV v. Kinan Shouk, Inc.*,
    No. 3:19-cv-00027-J-20MCR, 2019 U.S. Dist. LEXIS 178638
    (M.D. Fla. July 31, 2019) ....................................................................15

*Smoking Everywhere, Inc. v. United States FDA*,
    680 F. Supp. 2d 62 (D.D.C. 2010), *aff'd, Sottera, Inc. v. FDA*, 627
    F.3d 891 (D.C. Cir. 2010) ...................................................................25

*Sream, Inc. v. Habsa Enter.*,
    No. 16-81662-CIV, 2018 U.S. Dist. LEXIS 16741 (S.D. Fla. 2018)................15

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
    465 F.3d 1102 (9th Cir. 2006) ............................................................21

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
    205 F.3d 1219 (10th Cir. 2000) ..........................................................12

*United States v. Cal. Stem Cell Treatment Ctr.*,
    No. 18-cv-1005, 2022 U.S. Dist. LEXIS 156714 (C.D. Cal. 2022)..................24

*United States v. Innovative BioDefense, Inc.*,
    2020 U.S. Dist. LEXIS 155959 (C.D. Cal. May 4, 2020).................................22

*United States v. Utah Med. Prods.*,
    404 F. Supp. 2d 1315 (D. Utah 2005)..................................................24

*Vapor Technology Ass'n v. FDA*,
    977 F.3d 496 (6th Cir. 2020) ................................................................4

*Whopper-Burger, Inc. v. Burger King Corp.*,
    171 USPQ 805 (TTAB 1971) .............................................................20

**Statutes**

Family Smoking Prevention and Tobacco Control Act of 2009, Pub. L. No 111-31, 123 Stat. 1776 (2009)..........................................2, 4, 19

15 U.S.C. § 1071 ....................................................................................20

15 U.S.C. § 1119 ....................................................................................21

15 U.S.C. § 1125(d) .................................................................................6

21 U.S.C. § 321(rr) (2009) ...............................................................2, 3, 8

21 U.S.C. § 331 .........................................................................1, 5, 8, 16

21 U.S.C. § 332(a) .................................................................................22

21 U.S.C. § 334 ......................................................................................22

21 U.S.C. § 337(a) ............................................................................22, 23

21 U.S.C. § 387a(b) .................................................................................3

21 U.S.C. § 387b(6)(A)......................................................................1, 5, 8

21 U.S.C. § 387j ...............................................................................1, 4, 16

28 U.S.C. § 1292(c)(1).............................................................................2

**Other Authorities**

Fed. R. Civ. P. 8(a)................................................................................23

Fed. R. Civ. P. 8(c)...........................................................................20, 23

81 Fed. Reg. 28973 (May 10, 2016) (codified at 21 C.F.R. § 1143.1)........3, 4, 8, 16

37 C.F.R. § 2.117(a)...............................................................................21

## <u>FEDERAL CIRCUIT RULE 47.5 STATEMENT OF RELATED CASES</u>

No. 23-1544

Appellants are unaware of any related cases under Federal Circuit Rule 47.5.


_____/s/ Eric N. Heyer_____
Eric N. Heyer

## **INTRODUCTION**

Before an electronic cigarette may be lawfully marketed or sold in the United States, the Food and Drug Administration ("FDA") must grant marketing authorization for the electronic cigarette. 21 U.S.C. § 387j. At minimum, FDA requires such products that do not themselves contain nicotine to both (i) have been commercially marketed as of August 8, 2016, and (ii) be the subject of an application for premarket authorization filed by September 9, 2020, to be eligible for FDA's deferred enforcement policy regarding this premarket authorization requirement. Electronic cigarettes marketed or sold in the United States without marketing authorization or outside of FDA's deferred enforcement policy are *per se* illegal and sold in violation of the Federal Food, Drug and Cosmetic Act ("FDCA").

Appellee VPR Brands, LP ("VPR") admittedly did not comply with these requirements, putting its electronic cigarette products in violation of the FDCA. 21 U.S.C. §§ 387b(6)(A), 331. Yet VPR secured a federal trademark registration for its ELF mark used on those violative products. Despite VPR's marketing and sale of its electronic cigarettes constituting a *per se* violation of the FDCA, and VPR therefore lacking lawful use in commerce of its ELF mark, the district court declined to adopt and apply the unlawful use doctrine, which requires a mark-holder to have lawful use of its mark, and entered a preliminary injunction against Appellants' use of their ELFBAR mark. This injunction has caused immediate and ongoing substantial

financial hardship, with losses in the tens of millions of dollars. As this Court reviews the legal conclusions underlying the district court's grant of the preliminary injunction *de novo*, the Court should conclude that the unlawful use doctrine applies and requires vacating the injunction because VPR cannot succeed on its underlying trademark infringement claims.

## STATEMENT OF JURISDICTION

Because VPR alleges a claim for patent infringement, this Court has jurisdiction pursuant to 28 U.S.C. § 1292(c)(1). *Nitro Leisure Prods., LLC v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed. Cir. 2003).

## STATEMENT OF ISSUES

1.    Whether the district court erred in failing to adopt the lawful use requirement and as a result granting a preliminary injunction in favor of Appellee VPR.

## STATEMENT OF THE CASE

## I.    FEDERAL REGULATORY FRAMEWORK GOVERNING ELECTRONIC CIGARETTES

Since 2009, FDA has regulated tobacco products under the FDCA. *See* Family Smoking Prevention and Tobacco Control Act of 2009 ("TCA"), Pub. L. No 111-31, 123 Stat. 1776 (2009). As originally enacted, the TCA defined a tobacco product, in relevant part, as "any product made or derived from tobacco that is intended for human consumption, ***including any component, part, or accessory of a tobacco***

*product*." 21 U.S.C. § 321(rr) (2009) (emphasis added).[1] The TCA's requirements

originally applied only to some traditional tobacco products, 21 U.S.C. § 387a(b),

so, in 2016, FDA enacted a rule that "deemed" electronic cigarettes containing or

intended to be used with tobacco-derived nicotine to be "tobacco products." 81 Fed.

Reg. 28973 (May 10, 2016) (codified at 21 C.F.R. § 1143.1) ("Deeming Rule").

The Deeming Rule took effect on August 8, 2016, *see* 81 Fed. Reg. at 28974,

and subjects *all* electronic cigarettes, including devices sold without any nicotine-

containing solution, or "e-liquid," to the requirements of Subchapter IX of the

FDCA, 21 U.S.C. §§ 387-387(u). The definition of a "tobacco product" includes

"any component or part of a tobacco product" and "component or part" is defined to

mean "any software or assembly of materials ***intended or reasonably expected*** . . .

to alter or affect the tobacco product's performance, composition, constituents or

characteristics; or . . . to be used with or for the human consumption of a tobacco

product." 21 C.F.R. § 1143.1 (emphasis added). FDA specifically listed "batteries"

---

[1]  In 2022, recognizing that electronic cigarettes containing synthetically manufactured nicotine fell outside of FDA's jurisdiction, Congress expanded the statutory definition of "tobacco product" to include products "containing nicotine from any source." *See* Consolidated Appropriations Act, 2022, Pub. Law 117-103, Division P, Title I, Subtitle B (amending 21 U.S.C. § 321(rr) effective April 14, 2022). Because VPR's ELF-branded electronic cigarettes do not contain any nicotine-containing e-liquid of any type, this amendment does not affect their status under the FDCA. Conversely, the exemplars of Defendants' ELFBAR electronic cigarettes introduced into evidence contain synthetic nicotine and were sold in late 2021, before they were designated a "tobacco product" under the new legislation. *See* Appx253.

and "tank systems," as well as "e-liquids, tanks, cartridges, pods, wicks, [and] atomizers" as examples of tobacco product components or parts in its preamble to the Deeming Rule. 81 Fed. Reg. at 28975, 29028; *see also Nicopure Labs, LLC v. FDA*, 944 F.3d 267, 273 n.1 (D.C. Cir. 2019).

Under the TCA, FDA must issue a marketing order for any tobacco product to be lawfully commercially marketed if that product was not commercially marketed as of February 15, 2007. 21 U.S.C. § 387j(a)(1)(A), (a)(2). To obtain a marketing order, manufacturers of electronic cigarettes must submit a premarket tobacco product application ("PMTA") to FDA. *See* 81 Fed. Reg. at 28990-97.

Because millions of electronic cigarette products were already commercially marketed as of the Deeming Rule's effective date, FDA adopted a discretionary enforcement policy that allowed for a delayed compliance period for electronic cigarette products. *See* 81 Fed. Reg. at 29009-15. Under this policy, electronic cigarette models on the market as of August 8, 2016, would not be subject to FDA enforcement action so long as manufacturers submitted a PMTA by August 8, 2018. 81 Fed. Reg. at 28977-78, 29011.

FDA's PMTA submission deadline subsequently changed multiple times over the succeeding years. *See Vapor Technology Ass'n v. FDA*, 977 F.3d 496, 497-502 (6th Cir. 2020) (describing district court litigation around deadline). Ultimately, FDA specified that if an electronic cigarette was the subject of a PMTA submitted

by September 9, 2020, the manufacturer could continue to market that product for an additional period of up to one year, provided FDA had taken no adverse action on the pending application. *See* Appx176-Appx177.

As a result, electronic cigarette devices sold without any nicotine-containing e-liquid but intended or reasonably expected to be used with nicotine that were not commercially marketed in the United States as of August 8, 2016, are "adulterated" tobacco products under the FDCA and their sale is illegal unless and until FDA issues them a marketing order. 21 U.S.C. §§ 387b(6)(A), 331.

VPR has never received a marketing order from FDA, including for its ELF electronic cigarettes. *See* Appx136; Appx145-Appx148.

## II.    DISTRICT COURT PROCEEDINGS

### A.    VPR's Complaint and Motion for Preliminary Injunction

VPR filed its original complaint on October 13, 2022 (ECF No. 1), and its first amended complaint ("FAC") on December 16, 2022. ECF No. 61; Appx63-Appx104. VPR alleges that it engages in the development of electronic cigarettes, "which are devices that deliver nicotine or cannabis," and that on November 24, 2017, it began marketing a line of such products under the ELF brand name and logo. Appx66-Appx67.

On June 5, 2018, VPR obtained U.S. Trademark Registration No. 5,486,616 in international class 34 for use of the mark ELF in connection with "Electronic

cigarette lighters, Electronic cigarettes; Smokeless cigarette vaporizer pipe." Appx67; Appx88.

VPR "exclusively" uses the ELF mark on two lines of electronic cigarettes: (1) the ELF Original Auto Draw Conceal Kit, which VPR describes as a "reusable (non-disposable) bar-shaped e-cigarette featuring a buttonless design, high-capacity battery, and a high-end aluminum body," Appx68; and (2) "high capacity e-cigarette batteries designed to be connected to industry standard refillable 510 mouthpieces," A89. VPR alleged that Defendants manufactured and sold competing electronic cigarettes under the brand ELFBAR. *See generally* Appx63-Appx104.

On October 14, 2022, VPR moved for a preliminary injunction on its claims for (1) trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a); (2) trademark infringement, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) common law unfair competition. *See* ECF No. 5. The amended complaint also includes claims for patent infringement, the basis for this Court's jurisdiction, and violations of 15 U.S.C. § 1125(d), *see* Appx82-Appx84, but VPR did not rely on these claims in moving for a preliminary injunction.

## B.    The Evidentiary Hearing

The district court held an evidentiary hearing over two days on VPR's motion in November and December 2022.

### 1.    VPR's ELF-Brand Electronic Cigarettes

VPR's CEO, Kevin Frija, testified that, at the earliest, VPR placed its initial purchase order with a Chinese manufacturer for, and began marketing, electronic cigarettes under the "ELF" mark in November 2017. Appx120; Appx124-Appx125. A product catalog on VPR's website stated that electronic cigarettes are "electronic devices which deliver nicotine through atomization, or vaping of e-liquids and without smoke and other chemical constituents typically found in traditional tobacco burning cigarette products." Appx225.

Frija testified that VPR marketed its ELF-branded electronic cigarettes without applying for or obtaining marketing authorization from FDA. Appx130-Appx131; Appx136. Frija testified that he expects that consumers use VPR's ELF products with nicotine. *Id.*; Appx137-Appx138.

### 2.    Defendants' Expert Testimony

Defendants presented expert testimony that confirmed that FDA's broad definition of "tobacco product" includes components and parts that do not contain nicotine if the vaporizer is intended or *reasonably expected* to be used with the consumption of a tobacco product, including nicotine containing e-liquids. Appx261-Appx264. Based in part on Frija's testimony that he expects that consumers use VPR's ELF products with nicotine, the expert concluded that VPR's electronic cigarettes are tobacco products as defined in the FDCA. Appx263-

Appx265; Appx272-Appx273; Appx281-Appx283; Appx286; *see also* 21 U.S.C. §

321(rr); 21 C.F.R. § 1143.1; 81 Fed. Reg. at 28973, 28975, 29016. Defendants'

expert confirmed that, because they were introduced after August 8, 2016, VPR's

ELF electronic cigarettes were not eligible for FDA's deferred enforcement policy

and required an FDA marketing order before they could be lawfully sold. Appx272;

Appx283.

Defendants' expert testified that FDA has historically taken enforcement

action against electronic cigarettes, that, like VPR's, do not contain nicotine,

including in the form of warning letters. Appx264; Appx273-Appx274; Appx276-

Appx283; *see* Appx216-Appx223; Appx235-Appx248. He testified that FDA

commonly uses waning letters to signal that a particular product appears to be an

unauthorized new tobacco product. Appx260-Appx263. The expert opined that

VPR's marketing of its ELF electronic cigarettes was a *per se* violation of the FDCA

because the products are considered adulterated and unlawfully marketed in

violation of the FDCA. Appx281-Appx284; *see also* 21 U.S.C. § 387b(6)(A); 21

U.S.C. § 331(a).

VPR did not proffer any expert opinions to challenge those of Defendants'

expert.

## C.    The District Court's Order

On February 23, 2023, the district court granted VPR's motion for preliminary injunction. Appx1-Appx32. Two fundamental conclusions of law underpinned the preliminary injunction: (1) the district court would not adopt the "unlawful use doctrine"; and (2) it is the responsibility of the Trademark Trial and Appeal Board ("TTAB"), not the district court, to determine when and how to apply the doctrine. Appx6-Appx12. In reaching its conclusion, the district court relied upon the Eleventh Circuit's decision in *FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071 (11th Cir. 2016), to not adopt the "unlawful use doctrine," but acknowledged that the Eleventh Circuit reached that conclusion "because the party asserting [the doctrine] had not submitted sufficient evidence in the district court to raise an issue of fact about plaintiff's allegedly unlawful use." Appx9.

Discounting the uniform holdings of this Circuit and the Ninth and Tenth Circuits, as well as numerous district court decisions across various circuits, including in the Southern District of Florida, the district court instead relied largely on an opinion from the Northern District of Georgia. Appx11 (citing *Hi-Tech Pharmaceuticals, Inc. v. Dynamic Sports Nutrition, LLC*, No. 16-cv-00949, 2020 WL 10728951 (N.D. Ga. Jan. 10, 2020)). The district court agreed with the *Hi-Tech* court that the TTAB is the "primary vehicle for cancellation of registered marks." *Id.* Despite VPR's allegations in its complaint, Frija's admissions, and the unrebutted

opinions of Defendants' expert, the district court also concluded that it could not determine whether VPR's electronic cigarettes violated the FDCA or its applicable regulations without "extrapolations and inferences from the present record [] which is a matter best left for the FDA in any event." Order at 11-12. The district court did not identify what, if any, additional evidence it would need to determine that VPR's products introduced after August 8, 2016, and sold without a marketing order or PMTA violate the FDCA. Appx11-Appx12.

The district court found the other relevant factors favored VPR and, despite VPR's lack of evidence that it had lost any sales as a result of Defendants' sales of ELFBAR products, and the evidence of substantial damages to be suffered by Defendants, the court rejected Defendants' request for a $200 million bond and set the bond at only $500,000. Appx14; Appx29-Appx31.

## SUMMARY OF ARGUMENT

The district court erred by not adopting the "unlawful use doctrine" and applying it to find VPR had *per se* violated the FDCA through its sales of its ELF electronic cigarettes. Had the Court adopted and applied the doctrine, it would have necessarily concluded that VPR did not have a substantial likelihood of success on the merits because it lacked a valid and enforceable trademark. And, accordingly, VPR would not have been entitled to a preliminary injunction.

## STANDARD OF REVIEW

This Court reviews preliminary injunction orders under the law of the regional circuit in which the district court sits. *Nitro Leisure Prods., LLC v. Acushnet Co.*, 341 F.3d at 1359. On substantive issues of trademark infringement, the Court also defers to the laws of the regional circuit. *Id.* Where a regional circuit court has not spoken on a question of substantive law, the Court must "predict how that regional circuit would have decided the issue in light of the decision of that circuit's various district courts, public policy, etc." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984); *see also AstraZenca LP v. Breath Ltd.*, 542 F. App'x 971, 982 (Fed. Cir. 2013) (considering Third Circuit decisions on similar, but not directly on point, bond issues, to determine how it would address retroactive increases in bond amounts before injunction had dissolved).

While the Eleventh Circuit generally reviews grants of preliminary injunctions for an abuse of discretion, it "review[s] any underlying legal conclusions *de novo*." *Curling v. Raffensperger*, 50 F.4th 1114, 1120-21 (11th Cir. 2022) (citation omitted).

## ARGUMENT

## I.  THE UNLAWFUL USE DOCTRINE HAS BEEN WIDELY ADOPTED BY ARTICLE III COURTS

This Circuit, as well as the Ninth and Tenth Circuits, has clearly held that ownership of a legally protectable trademark requires *lawful* use of the trademark in

commerce. *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526 (Fed. Cir. 1987) ("A valid application cannot be filed at all for registration of a mark without 'lawful use in commerce.'"); *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) ("It has long been the policy of the PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful*. . . . [W]e also agree with the PTO's policy and hold that only *lawful* use in commerce can give rise to trademark priority."); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000) (observing that "shipping goods in violation of federal law cannot qualify as the 'use in commerce' necessary to establish trademark rights" and suggesting that had the plaintiff sold its fumigant product without registering with the EPA, the defendant would have had a strong case that the plaintiff did not have a right in the trademark).

Several district courts within the Eleventh Circuit have recognized the unlawful use doctrine. *See Plant Food Sys. v. AgroSource, Inc.*, No. 16-cv-80326, 2016 U.S. Dist. LEXIS 124185, *57 (S.D. Fla. Sept. 12, 2016) (recommending denial of motion for preliminary injunction in part because plaintiff's fertilizer product labels contained language similar to language already found to make improper pesticidal claims by the EPA); *Craft Kratom Lab, Inc. v. Mancini*, No. 11-cv-80987, 2013 U.S. Dist. LEXIS 105852 (S.D. Fla. July 29, 2013) (finding plaintiff had no valid trademark used on incense because plaintiff fraudulently

misrepresented that it was not for human consumption but plaintiff's principals admitted that they intended the product to be used for human consumption); *Davidoff Extension S.A. v. Davidoff Int'l, Inc.*, 612 F. Supp. 4, 7-8 (S.D. Fla. 1984) (applying unlawful use doctrine in context of a trademark cancellation but finding that defendants failed to prove "unlawful use" by clear and convincing evidence).

Multiple district courts around the country, including in other circuits, have enforced the "lawful use" requirement to adjudicate rights and priority in trademark infringement disputes. *See*, *e.g.*, *NYcityVan, LLC v. Thomas*, 501 F. Supp. 3d 145, 148-149 (E.D.N.Y. 2020); *AOP Ventures, Inc. v. Steam Distrib., LLC*, EDCV 15-1586-VAP (KKx), 2016 U.S. Dist. LEXIS 193035, **14-15 (C.D. Cal. 2016) (holding that sale of bottles of nicotine-containing e-liquid was unlawful and did not give rise to trademark priority because labels failed to include California Proposition 65 warning of reproductive harm), *reconsideration granted in part and vacated on other grounds*, 2016 U.S. Dist. LEXIS 202438 (C.D. Cal. Dec. 27, 2016); *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) (Chin, J.) (observing that "a party that is in violation of the Food, Drug and Cosmetic Act . . . for not complying with federal labeling regulations cannot obtain a federally registered trademark, nor can it maintain or enforce a previously obtained trademark"); *Erva Pharm., Inc. v. Am. Cyanamid Co.*, 755 F. Supp. 36, 40 (D.P.R. 1991).

While other district courts have declined to adopt the unlawful use doctrine, *no* Circuit Court of Appeals, including the Eleventh Circuit, has squarely rejected it. In *FN Herstal SA*, 838 F.3d 1071, the Eleventh Circuit acknowledged the existence of the doctrine, but found it need not determine whether to accept or reject the doctrine, as "even if we were to adopt it [defendant] has not submitted evidence sufficient to raise an issue of fact in this respect," *id*. at 1086-87. The Fifth Circuit likewise has not *rejected* the unlawful use doctrine, but, in a brief discussion, similarly declined to adopt and apply it in a case in which it held that the district court had otherwise erred in its abandonment analysis. *See Perry v. H.J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 474-475 (5th Cir. 2021). Indeed, the Fifth Circuit's decision not to adopt and apply the unlawful use doctrine was of such a non-binding nature that a district court within the Fifth Circuit subsequently adopted and applied the doctrine because there was "lack of binding authority from the Fifth Circuit regarding the unlawful use doctrine." *I&I Hair Corp. v. Beauty Plus Trading Co.*, No. 3:20-cv-02719-M, 2021 U.S. Dist. LEXIS 168620, **4-5, 8-9 (N.D. Tex. July 13, 2021) (in denying motion to dismiss counterclaim that sought to invalidate plaintiff's trademark for unlawful use, noting *Perry* and holding that "[i]n light of the lack of binding authority from the Fifth Circuit regarding the unlawful use doctrine . . . applying the TTAB's unlawful use doctrine at this stage in the pleadings . . . is appropriate").

14

And like in *FN Herstal*, the district courts in the Eleventh Circuit that have chosen not to adopt the lawful use doctrine have typically done so in circumstances where the doctrine would be procedurally improper or the case could be resolved on other grounds. *See Roor Int'l BV v. Kinan Shouk, Inc.*, No. 3:19-cv-00027-J-20MCR, 2019 U.S. Dist. LEXIS 178638, *5 (M.D. Fla. July 31, 2019) (observing that applying doctrine at motion to dismiss stage would require consideration of plaintiff's product website for consumers in the Netherlands, which was extrinsic to complaint); *Hi-Tech Pharms.*, 2020 WL 10728951 (finding factual questions existed as to whether the plaintiff's product label disclosed a chemical ingredient that would render the product violative of the Federal Food, Drug and Cosmetic Act ("FDCA") or contained enough of a prohibited steroid to violate the Controlled Substances Act); *Stream, Inc. v. Habsa Enter.*, No. 16-81662-CIV, 2018 U.S. Dist. LEXIS 16741, *5 (S.D. Fla. 2018) (declining to adopt doctrine where claimed basis—Florida fictitious name registration statute—did not apply to plaintiff California corporation).

The Eleventh Circuit's decision in *FN Herstal* that it did not need to decide whether to adopt the unlawful use doctrine did not bind the district court and does not bind this Court. The facts here align with those instances in which courts have adopted and applied the doctrine. Unlike in *FN Herstal* or the *Hi-Tech* case out of the Northern District of Georgia on which the district court relied, Defendants

submitted sufficient, unrebutted evidence not only to surmount the "clear and convincing evidence" standard as to whether VPR's sales of its ELF electronic cigarettes were *per se* violations of the FDCA, but to definitively prove that they were. Because VPR's ELF electronic cigarettes that VPR's CEO admitted he expects are used with nicotine were introduced after August 8, 2016, lack a marketing order, and are not the subject of a PMTA, they are an "adulterated" tobacco product and their sale is a *per se* violation of 21 U.S.C. § 331(a).

## II.    THE LAWFUL USE REQUIREMENT IS PROPERLY APPLIED TO THE UNDISPUTED FACTS HERE

This case fits with those cases in which the unlawful use doctrine has been adopted and applied—the unrebutted evidence clearly and convincingly established that VPR's sales of ELF electronic cigarettes were *per se* violations of the FDCA, and so adoption and application of the doctrine would be determinative. The FDCA and 21 C.F.R. § 1143.1 require the conclusion that VPR's ELF electronic cigarettes are a tobacco product because, as VPR's CEO admitted, even though they are sold empty, VPR knows and expects that consumers use them with nicotine. Appx122; Appx137-Appx138. FDA expressly listed "batteries," "tank systems," and "tanks" as examples of tobacco product components or parts subject to the FDCA. 81 Fed. Reg. at 28975, 29028, 29041. Title 21 U.S.C. § 387j, in conjunction with the Deeming Rule's deferred enforcement policy, required VPR to obtain a marketing order for its products if they were not commercially marketed by August 8, 2016.

VPR's CEO admitted that its ELF electronic cigarettes were not commercially marketed until November 2017, Appx120; Appx124-Appx125; were sold without the FDA-required marketing authorization; and that VPR did not even apply for marketing authorization; Appx136.

Apart from its passing comment regarding "extrapolations and inferences from the present record," Appx12, the district court failed to address whether VPR's sales of its ELF electronic cigarettes were a *per se* violation of the FDCA, instead focusing repeatedly on the fact that the FDA had never *found* such a violation. Appx8; Appx11-Appx12. But there is no "extrapolation" or "inference" left to make. Appx12. Proving unlawful use requires either that "the issue of compliance has previously been determined (with a finding of non-compliance) by a court or government agency having competent jurisdiction" *or* that "there has been a per se violation of a statute regulating the sale of a party's goods." *FN Herstal*, 838 F.3d at 1087 (internal quotation omitted). Defendants only needed to prove the latter, which they did.

Unlike cases where questions existed regarding the sufficiency of the evidence to support a finding of unlawful use if the doctrine were adopted, here the evidence was unrebutted and came directly from VPR itself. VPR needed to obtain a marketing order before it introduced its electronic cigarette products into

commerce, but failed to do so. Thus, its ELF electronic cigarettes were and are illegally on the market in violation of the FDCA.

And while the testimony of Appellants' expert may have provided context for how FDA interprets and enforces the FDCA, his opinions were not necessary to, nor the basis for, Appellants' contention that VPR's sales of ELF electronic cigarettes constitute a *per se* violation of the FDCA. VPR's own allegations and the testimony of its CEO sufficiently established these facts.

The district court's failure to consider both this evidence and the evidence from FDA Warning Letters the subject of which was similar electronic cigarettes that likewise lack any nicotine-containing substance was clear error. Appx216-Appx223; Appx235-Appx248. Indeed, the district court even mischaracterized the expert's testimony when it stated that the expert testified he had not "seen an example of an FDA enforcement proceeding against a product 'just like this.'" Appx8 n.10. As the immediately following testimony illustrates, Appellants' expert was saying he was "not aware of a circumstance where somebody had testified and said, I expect that my consumers will use this with tobacco or with nicotine[.]" *See* Appx283. Typically, principals of companies violating the FDCA do not readily testify that their products are reasonably expected to be used with nicotine. Instead, FDA must infer or determine the products' use based on a variety of facts. Here, however, VPR's CEO directly admitted that he expected VPR's ELF electronic

18

cigarettes to be used with nicotine, thereby subjecting them to the FDCA. When the evidence is actually considered, and not ignored or intentionally mischaracterized, no further extrapolations or inferences are required to find a *per se* violation by VPR.

VPR's flouting of the TCA's premarket authorization requirements for every single unit of its ELF electronic cigarettes sold is exactly the type of material violation of "such gravity and significance that the [trademark] usage must be considered unlawful—so tainted that, as a matter of law, it could create no trademark rights." *FN Herstal SA*, 838 F.3d at 1087 (quoting *Gen. Mills, Inc. v. Health Valley Foods*, 1992 TTAB LEXIS 37, *10-11, 24 U.S.P.Q.2D (BNA) 1270, 1274 (Trademark Trial & App. Bd. May 1, 1992)); *accord Dessert Beauty*, 617 F. Supp. 2d at 190-94 (Chin, J.) (concluding sales of cosmetics in violation of FDA labeling regulations were a potentially sufficient basis for unlawful use and finding disputed issues of fact regarding compliance); *Erva Pharm.*, 755 F. Supp. at 39-42 (granting defendant's motion for summary judgment on grounds of unlawful use because plaintiff's product was a misbranded drug and plaintiff failed to properly register and list its product with FDA). The district court's injunction sharply contradicts the "spirit of the Lanham Act and the common law of trademark" since it "put[s] the government in the anomalous position of extending the benefits of trademark protection to [VPR] based upon actions [VPR] took in violation of . . . [the]

government's laws." *NYcityVAN*, 501 F. Supp. 3d at 149 (quoting *CreAgri*, 474 F.3d at 630).

The district court further erred in reasoning that it should decline to adopt the doctrine because the cancellation of trademarks is the "primary responsibility" of the TTAB and the Lanham Act "makes the TTAB the primary vehicle for cancellation of registered marks." Appx9-Appx10; Appx11. Not only is illegality an affirmative defense expressly recognized in Federal Rule of Civil Procedure 8(c), but "the Lanham Act expressly gives district courts the power to cancel federal trademarks issued by the PTO when they violate the Lanham Act." *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1169 (11th Cir. 2019) (citing 15 U.S.C. § 1119); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 155 (2015) ("[D]istrict courts can cancel registrations during infringement litigation, just as they can adjudicate infringement in suits seeking judicial review of registration decisions."). Indeed, any decision by the TTAB may be reviewed *de novo* by a district court under Section 21(b) of the Trademark Act, 15 U.S.C. § 1071. *See, e.g., Whopper-Burger, Inc. v. Burger King Corp.,* 171 USPQ 805, 807 (TTAB 1971) ("A decision by the United States District Court would be binding on the Patent Office whereas a determination by the Patent Office as to respondent's right to retain its registration would not be binding or *res judicata* in respect to proceedings pending before the Federal District Court.").

In its order, the district court relied on *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014). But there, the Ninth Circuit noted that cancellation may "be sought if there is already an ongoing action that involves a registered mark." *Id*. This case is also similarly postured as *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1111 (9th Cir. 2006), where a party sought cancellation of a trademark in its counterclaim, and which was quoted by the district court for the proposition that "Section 37 of the Lanham Act, 15 U.S.C. § 1119, permits district courts to resolve these subsidiary registration disputes when joined with an infringement claim." As in that case, Appellants will need to assert a declaratory action for cancellation of VPR's ELF mark as a compulsory counterclaim.

The district court's reasoning would essentially allow VPR, or any future party that obtains a trademark registration without lawful use, to evade meaningful review of the registration's validity while pursuing claims for infringement. Under 37 C.F.R. § 2.117(a), the TTAB typically suspends cancellation proceedings once advised of a parallel district court infringement action; if the district court refuses to adopt or apply the doctrine, parties like Defendants will be deprived of any forum whatsoever to challenge the validity of the registration until after the infringement case proceeds to judgment. This practical policy implication also supports adopting and applying the unlawful use doctrine here.

## III.   ADOPTION AND APPLICATION OF THE UNLAWFUL USE DOCTRINE IS CONSISTENT WITH THE FDCA

Applying the unlawful use doctrine, and requiring VPR to have lawful use of its ELF Mark, in the circumstances presented here is also consistent with the FDCA.

*First*, application of the unlawful use doctrine here is consistent with the FDCA because Appellants have only raised the doctrine as a defense, not as an affirmative claim for relief. The FDCA provides for several types of proceedings that may be brought to enforce or restrain violations of the Act. For example, a district court may enter an injunction prohibiting a defendant who has violated the Act from continuing to manufacture or sell FDA-regulated products or order the seizure and destruction of the offending products, 21 U.S.C. §§ 332(a), 334; *see, e.g.*, *United States v. Innovative BioDefense, Inc.*, 2020 U.S. Dist. LEXIS 155959 (C.D. Cal. May 4, 2020) (entering injunction against a company that had violated the FDCA by selling non-FDA-approved drugs).

"[A]ll such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States." 21 U.S.C. § 337(a). In other words, "no private right of action exists for a violation of the FDCA." *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284 n.10 (11th Cir. 2002). As a result, courts often dismiss claims brought by plaintiffs that are based on a defendant's alleged violation of the FDCA. *See, e.g.*, *Keller v. Strauss*, 480 F. App'x 552, 554 (11th Cir.) (per curiam) ("Accordingly, to the extent that [plaintiff] brought claims for the

enforcement or to restrain violations of the FDCA, the district court was proper to dismiss them.").

But Section 337(a) does not apply here because Appellants have not brought a *claim* for enforcement or to restrain a violation of the FDCA. Rather, Appellants simply raised an *affirmative defense* to VPR's claims. An "affirmative defense" is "quite different from a claim." *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264 (11th Cir. 1999). A claim is "essentially an action which asserts a right to payment" or other relief, while an "affirmative defense" is "offered and alleged by the defendant as a reason in law or fact why the plaintiff should not recover or establish what he seeks." *Id.* (cleaned up); *compare also* Fed. R. Civ. P. 8(a) (discussing "claim[s] for relief") *with* Fed. R. Civ. P. 8(c) (discussing "affirmative defense[s]," including "illegality"). Thus, by its plain text, 21 U.S.C. § 337(a)'s prohibition on private claims does not apply to Appellants' affirmative defense of unlawful use.

Appellants are not seeking to enforce the FDCA by requiring VPR to remove its products from the market or pay monetary compensation based on VPR's sales of illegal products. Similarly, Appellants are not making an affirmative claim against VPR for violating the Lanham Act by selling ELF electronic cigarettes in violation of the FDCA. *See Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817 (W.D. Tex. 2001).

The rationale for prohibiting private parties from bringing claims to enforce or restrain violations of the FDCA does not apply to Appellants' assertion of the affirmative defense of unlawful use. Allowing private parties to recover monetary damages for a defendant's violations of the FDCA or to obtain an injunction preventing a defendant from selling its products may interfere with the government's own enforcement strategies. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001) (noting that FDA's enforcement strategies "can be skewed by allowing [private parties to bring] fraud-on-the-FDA claims"). But permitting Appellants to defeat VPR's claims by asserting the unlawful use doctrine as an affirmative defense would not affect the government's enforcement strategy with respect to electronic cigarettes.

*Second*, Article III courts, not federal executive branch agencies, have the ultimate say on whether a party's conduct violates a federal statute. Indeed, federal courts routinely adjudicate disputes wherein FDA asserts that a party has violated the FDCA or, conversely, a party asserts that FDA has wrongfully found it to have violated the FDCA and taken some enforcement action. *See*, *e.g.*, *United States v. Cal. Stem Cell Treatment Ctr.*, No. 18-cv-1005, 2022 U.S. Dist. LEXIS 156714 (C.D. Cal. 2022) (denying FDA's request for injunction based on allegations that stem cell treatments cause adulteration and misbranding of drugs); *United States v. Utah Med. Prods.*, 404 F. Supp. 2d 1315 (D. Utah 2005) (finding medical device

manufacturer in compliance with FDA quality system regulations and denying FDA's request for permanent injunction); *Smoking Everywhere, Inc. v. United States FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), *aff'd*, *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010) (granting preliminary injunction against FDA's denial of entry of electronic cigarettes into United States on grounds they were unapproved drug-device combination products).

Therefore, when a defendant raises the affirmative defense of unlawful use in a Lanham Act case such as this one, courts have an obligation to determine whether the plaintiff's use of the trademark in question was lawful. *See, e.g.*, *Dessert Beauty*, 617 F. Supp. 2d at 189-94; *Erva Pharms*, 755 F. Supp. at 39-42.

The fact that FDA has not initiated an enforcement action against VPR does not preclude this Court from determining whether VPR's conduct is legal. *See Altria Group, Inc. v. Good*, 555 U.S. 70, 89-90 (2008) ("agency nonenforcement of a federal statute is not the same as a policy of approval"); *Allergan United States v. Imprimis Pharms., Inc.*, No. 17-cv-01551, 2017 U.S. Dist. LEXIS 223117, *23 (C.D. Cal. Nov. 14, 2017) ("As an executive agency, the FDA has discretion to enforce the law, but the lack of enforcement does not make [defendant's] actions legal.").

Adopting a position that only FDA can determine whether a product violates the FDCA in deciding whether a trademark registrant or applicant has lawful use would eliminate any lawful use requirement for any FDA-regulated product. It

would strip trademark examiners and the TTAB of the ability to decide whether an

applicant had lawful use in commerce for an FDA-regulated product because the

legality of the products would be strictly decided by FDA. The Court should reject

such a conclusion as not supported by the plain text of either the FDCA or the

Lanham Act.

## **CONCLUSION**

For the foregoing reasons, the district court erred in failing to adopt and apply

the unlawful use doctrine, and consequently granting the preliminary injunction in

favor of VPR Brands, LP. Accordingly, the Court should vacate the preliminary

injunction entered by the district court.


Dated: May 1, 2023                    Respectfully Submitted,

                                      THOMPSON HINE LLP

                                 By: /s/ Eric N. Heyer
                                      Eric N. Heyer
                                      eric.heyer@thompsonhine.com
                                      Joseph A. Smith
                                      joe.smith@thompsonhine.com
                                      Michelle Li
                                      michelle.li@thompsonhine.com
                                      1919 M Street, NW, Ste. 700
                                      Washington, DC 20036
                                      Phone: (202) 331-8800
                                      Fax: (202) 331-8330

                                      Carrie Shufflebarger
                                      carrie.shufflebarger@thompsonhine.com

Thompson Hine LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
(513) 352-6700

*Counsel for Defendants-Appellants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with the type-volume requirement set forth in Federal Rule of Appellate Procedure 32. The word count feature found in Microsoft Word reports that the Emergency Motion contains 5,956 words.


_____/s/ Eric N. Heyer_____
Eric N. Heyer

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 1, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Joel B. Rothman, Esq.
SRIPLAW, P.A.
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com
*Counsel for Plaintiff-Appellee*

/s/Eric N. Heyer
Eric N. Heyer