No. 23-1544
IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**VPR BRANDS, LP,**
*Plaintiff-Appellee*
**v.**
**SHENZHEN WEIBOLI TECHNOLOGY CO. LTD., YLSN DISTRIBUTION LLC, ECTO WORLD LLC, SAFA GOODS LLC, D&A DISTRIBUTION LLC, UNISHOW (U.S.A.), INC., SV3 LLC, KINGDOM VAPOR INC.,**
*Defendants-Appellants*

---

Appeal from the United States District Court for the Southern District of Florida
in Case No. 9:22-cv-81576-AMC, Judge Aileen M. Cannon

---

**APPELLANTS' CORRECTED PRINCIPAL BRIEF**

---

Carrie Shufflebarger
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, OH 45202
Phone: 513.352.6678
Fax: 513.241.4771
Carrie.Shufflebarger@ThompsonHine.com

Eric N. Heyer
Joseph A. Smith
Meixuan (Michelle) Li
THOMPSON HINE LLP
1919 M Street NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
Eric.Heyer@ThompsonHine.com
Joe.Smith@ThompsonHine.com
Michelle.Li@ThompsonHine.com

*Counsel for Defendants-Appellants*

## FEDERAL CIRCUIT RULE 47.4 CERTIFICATE OF INTEREST

No. 23-1544

The undersigned counsel of record certifies the following:

**1. The full name of every entity represented in this case by me is:**

Shenzhen Weiboli Technology Co. Ltd., YLSN Distribution LLC, ECTO World LLC, D&A Distribution LLC, Unishow (U.S.A.), Inc., SV3 LLC, and Kingdom Vapor Inc.

**2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

N/A

**4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:**

Thompson Hine LLP; Eric N. Heyer; Carrie Shufflebarger; Joseph A. Smith; Meixuan (Michelle) Li; Anna Stressenger; and Krupa Patel

McDowell Hetherington LLP; Tucker C. Motta

**5. Related Cases. Other than the originating case(s) for this case are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?**

Yes. The following related cases, which have been consolidated with the originating case are pending in the United States District Court for the Southern District of Florida:

- VPR Brands, LP v. Imiracle HK Limited and Heaven Gifts International Limited, 22-cv-8197

- VPR Brands, LP v. Shenzhen Imiracle Technology Co. Ltd., et al., 22-cv-62373

**6. Organizational Victims and Bankruptcy Cases.**

N/A

/s/ Eric N. Heyer
Eric N. Heyer

# TABLE OF CONTENTS


**Page**

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION........................................................................2

STATEMENT OF ISSUES ..............................................................................2

STATEMENT OF THE CASE............................................................................2

I. FEDERAL REGULATORY FRAMEWORK GOVERNING ELECTRONIC CIGARETTES.............................................2

II. DISTRICT COURT PROCEEDINGS.....................................................5

A. VPR's Complaint and Motion for Preliminary Injunction .........5

B. The Evidentiary Hearing.....................................................6

1. VPR's ELF-Brand Electronic Cigarettes..........................7

2. Defendants' Expert Testimony........................................7

C. The District Court's Order ....................................................9

SUMMARY OF ARGUMENT ............................................................................10

STANDARD OF REVIEW ...............................................................................11

ARGUMENT ............................................................................................11

I. THE UNLAWFUL USE DOCTRINE HAS BEEN WIDELY ADOPTED BY ARTICLE III COURTS...........................................11

II. THE LAWFUL USE REQUIREMENT IS PROPERLY APPLIED TO THE UNDISPUTED FACTS HERE...........................................16

III. ADOPTION AND APPLICATION OF THE UNLAWFUL USE DOCTRINE IS CONSISTENT WITH THE FDCA..........................22

CONCLUSION..........................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595 (9th Cir. 2014) ....................21

*Allergan United States v. Imprimis Pharms., Inc.*, No. 17-cv-01551, 2017 U.S. Dist. LEXIS 223117 (C.D. Cal. Nov. 14, 2017) ....................25

*Altria Group, Inc. v. Good*, 555 U.S. 70 (2008)....................25

*Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259 (11th Cir. 1999) ....................23

*AOP Ventures, Inc. v. Steam Distrib., LLC*, EDCV 15-1586-VAP (KKx), 2016 U.S. Dist. LEXIS 193035 (C.D. Cal. 2016), *reconsideration granted in part and vacated on other grounds*, 2016 U.S. Dist. LEXIS 202438 (C.D. Cal. Dec. 27, 2016)....................13

*AstraZenca LP v. Breath Ltd.*, 542 F. App'x 971 (Fed. Cir. 2013) ....................11

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015)....................20

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)....................24

*Craft Kratom Lab, Inc. v. Mancini*, No. 11-cv-80987, 2013 U.S. Dist. LEXIS 105852 (S.D. Fla. July 29, 2013) ....................12

*CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626 (9th Cir. 2007) ....................12

*Curling v. Raffensperger*, 50 F.4th 1114 (11th Cir. 2022)....................11

*Davidoff Extension S.A. v. Davidoff Int'l, Inc.*,
612 F. Supp. 4 (S.D. Fla. 1984) ....................................................................13

*Dessert Beauty, Inc. v. Fox*,
617 F. Supp. 2d 185 (S.D.N.Y. 2007) ..............................................13, 19, 25

*Ellis v. C.R. Bard, Inc.*,
311 F.3d 1272 (11th Cir. 2002) ....................................................................22

*Erva Pharm., Inc. v. Am. Cyanamid Co.*,
755 F. Supp. 36 (D.P.R. 1991) ....................................................13, 19, 25

*FN Herstal SA v. Clyde Armory, Inc.*,
838 F.3d 1071 (11th Cir. 2016) ..........................................................*passim*

*Gray v. Daffy Dan's Bargaintown*,
823 F.2d 522 (Fed. Cir. 1987) ....................................................................12

*Healthpoint, Ltd. v. Ethex Corp.*,
273 F. Supp. 2d 817 (W.D. Tex. 2001) ........................................................23

*Hi-Tech Pharmaceuticals, Inc. v. Dynamic Sports Nutrition, LLC*,
No. 16-cv-00949, 2020 WL 10728951 (N.D. Ga. Jan. 10, 2020) ..................9, 15

*I&I Hair Corp. v. Beauty Plus Trading Co.*,
No. 3:20-cv-02719-M, 2021 U.S. Dist. LEXIS 168620 (N.D. Tex.
July 13, 2021)..............................................................................................14

*Keller v. Strauss*,
480 F. App'x 552 (11th Cir.)........................................................................22

*Nicopure Labs, LLC v. FDA*,
944 F.3d 267 (D.C. Cir. 2019)........................................................................4

*Nitro Leisure Prods., LLC v. Acushnet Co.*,
341 F.3d 1356 (Fed. Cir. 2003) ................................................................2, 11

*NYcityVan, LLC v. Thomas*,
501 F. Supp. 3d 145 (E.D.N.Y. 2020) ..............................................13, 19, 20

*Panduit Corp. v. All States Plastic Mfg. Co.*,
744 F.2d 1564 (Fed. Cir. 1984) ....................................................................11

*Perry v. H.J. Heinz Co. Brands, L.L.C.*,
994 F.3d 466 (5th Cir. 2021) .......................................................................14

*Plant Food Sys. v. AgroSource, Inc.*,
No. 16-cv-80326, 2016 U.S. Dist. LEXIS 124185 (S.D. Fla. Sept. 12, 2016) .......................................................................12

*PlayNation Play Sys., Inc. v. Velex Corp.*,
924 F.3d 1159 (11th Cir. 2019) .......................................................................20

*Roor Int'l BV v. Kinan Shouk, Inc.*,
No. 3:19-cv-00027-J-20MCR, 2019 U.S. Dist. LEXIS 178638 (M.D. Fla. July 31, 2019).......................................................................15

*Smoking Everywhere, Inc. v. United States FDA*,
680 F. Supp. 2d 62 (D.D.C. 2010), *aff'd*, *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010).......................................................................25

*Sream, Inc. v. Habsa Enter.*,
No. 16-81662-CIV, 2018 U.S. Dist. LEXIS 16741 (S.D. Fla. 2018)................15

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
465 F.3d 1102 (9th Cir. 2006) .......................................................................21

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
205 F.3d 1219 (10th Cir. 2000) .......................................................................12

*United States v. Cal. Stem Cell Treatment Ctr.*,
No. 18-cv-1005, 2022 U.S. Dist. LEXIS 156714 (C.D. Cal. 2022)...................24

*United States v. Innovative BioDefense, Inc.*,
2020 U.S. Dist. LEXIS 155959 (C.D. Cal. May 4, 2020).................................22

*United States v. Utah Med. Prods.*,
404 F. Supp. 2d 1315 (D. Utah 2005).......................................................................24

*Vapor Technology Ass'n v. FDA*,
977 F.3d 496 (6th Cir. 2020) .......................................................................4

*Whopper-Burger, Inc. v. Burger King Corp.*,
171 USPQ 805 (TTAB 1971) .......................................................................20

**Statutes**

Family Smoking Prevention and Tobacco Control Act of 2009, Pub. L. No 111-31, 123 Stat. 1776 (2009)........................................2, 4, 19

15 U.S.C. § 1071........................................20

15 U.S.C. § 1119........................................21

15 U.S.C. § 1125(d)........................................6

21 U.S.C. § 321(rr) (2009)........................................2, 3, 8

21 U.S.C. § 331........................................1, 5, 8, 16

21 U.S.C. § 332(a)........................................22

21 U.S.C. § 334........................................22

21 U.S.C. § 337(a)........................................22, 23

21 U.S.C. § 387a(b)........................................3

21 U.S.C. § 387b(6)(A)........................................1, 5, 8

21 U.S.C. § 387j........................................1, 4, 16

28 U.S.C. § 1292(c)(1)........................................2

**Other Authorities**

Fed. R. Civ. P. 8(a)........................................23

Fed. R. Civ. P. 8(c)........................................20, 23

81 Fed. Reg. 28973 (May 10, 2016) (codified at 21 C.F.R. § 1143.1)........3, 4, 8, 16

37 C.F.R. § 2.117(a)........................................21

## FEDERAL CIRCUIT RULE 47.5 STATEMENT OF RELATED CASES

No. 23-1544

Appellants are unaware of any related cases under Federal Circuit Rule 47.5.

/s/ Eric N. Heyer
Eric N. Heyer

# INTRODUCTION

Before an electronic cigarette may be lawfully marketed or sold in the United States, the Food and Drug Administration ("FDA") must grant marketing authorization for the electronic cigarette. 21 U.S.C. § 387j. At minimum, FDA requires such products that do not themselves contain nicotine to both (i) have been commercially marketed as of August 8, 2016, and (ii) be the subject of an application for premarket authorization filed by September 9, 2020, to be eligible for FDA's deferred enforcement policy regarding this premarket authorization requirement. Electronic cigarettes marketed or sold in the United States without marketing authorization or outside of FDA's deferred enforcement policy are *per se* illegal and sold in violation of the Federal Food, Drug and Cosmetic Act ("FDCA").

Appellee VPR Brands, LP ("VPR") admittedly did not comply with these requirements, putting its electronic cigarette products in violation of the FDCA. 21 U.S.C. §§ 387b(6)(A), 331. Yet VPR secured a federal trademark registration for its ELF mark used on those violative products. Despite VPR's marketing and sale of its electronic cigarettes constituting a *per se* violation of the FDCA, and VPR therefore lacking lawful use in commerce of its ELF mark, the district court declined to adopt and apply the unlawful use doctrine, which requires a mark-holder to have lawful use of its mark, and entered a preliminary injunction against Appellants' use of their ELFBAR mark. This injunction has caused immediate and ongoing substantial

financial hardship, with losses in the tens of millions of dollars. As this Court reviews the legal conclusions underlying the district court's grant of the preliminary injunction *de novo*, the Court should conclude that the unlawful use doctrine applies and requires vacating the injunction because VPR cannot succeed on its underlying trademark infringement claims.

## STATEMENT OF JURISDICTION

Because VPR alleges a claim for patent infringement, this Court has jurisdiction pursuant to 28 U.S.C. § 1292(c)(1). *Nitro Leisure Prods., LLC v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed. Cir. 2003).

## STATEMENT OF ISSUES

1. Whether the district court erred in failing to adopt the lawful use requirement and as a result granting a preliminary injunction in favor of Appellee VPR.

## STATEMENT OF THE CASE

### I. FEDERAL REGULATORY FRAMEWORK GOVERNING ELECTRONIC CIGARETTES

Since 2009, FDA has regulated tobacco products under the FDCA. *See* Family Smoking Prevention and Tobacco Control Act of 2009 ("TCA"), Pub. L. No 111-31, 123 Stat. 1776 (2009). As originally enacted, the TCA defined a tobacco product, in relevant part, as "any product made or derived from tobacco that is intended for human consumption, ***including any component, part, or accessory of a tobacco***

***product***." 21 U.S.C. § 321(rr) (2009) (emphasis added).[1] The TCA's requirements originally applied only to some traditional tobacco products, 21 U.S.C. § 387a(b), so, in 2016, FDA enacted a rule that "deemed" electronic cigarettes containing or intended to be used with tobacco-derived nicotine to be "tobacco products." 81 Fed. Reg. 28973 (May 10, 2016) (codified at 21 C.F.R. § 1143.1) ("Deeming Rule").

The Deeming Rule took effect on August 8, 2016, *see* 81 Fed. Reg. at 28974, and subjects *all* electronic cigarettes, including devices sold without any nicotine-containing solution, or "e-liquid," to the requirements of Subchapter IX of the FDCA, 21 U.S.C. §§ 387-387(u). The definition of a "tobacco product" includes "any component or part of a tobacco product" and "component or part" is defined to mean "any software or assembly of materials ***intended or reasonably expected*** . . . to alter or affect the tobacco product's performance, composition, constituents or characteristics; or . . . to be used with or for the human consumption of a tobacco product." 21 C.F.R. § 1143.1 (emphasis added). FDA specifically listed "batteries"

[1] In 2022, recognizing that electronic cigarettes containing synthetically manufactured nicotine fell outside of FDA's jurisdiction, Congress expanded the statutory definition of "tobacco product" to include products "containing nicotine from any source." *See* Consolidated Appropriations Act, 2022, Pub. Law 117-103, Division P, Title I, Subtitle B (amending 21 U.S.C. § 321(rr) effective April 14, 2022). Because VPR's ELF-branded electronic cigarettes do not contain any nicotine-containing e-liquid of any type, this amendment does not affect their status under the FDCA. Conversely, the exemplars of Defendants' ELFBAR electronic cigarettes introduced into evidence contain synthetic nicotine and were sold in late 2021, before they were designated a "tobacco product" under the new legislation. *See* Appx253.

and "tank systems," as well as "e-liquids, tanks, cartridges, pods, wicks, [and] atomizers" as examples of tobacco product components or parts in its preamble to the Deeming Rule. 81 Fed. Reg. at 28975, 29028; *see also Nicopure Labs, LLC v. FDA*, 944 F.3d 267, 273 n.1 (D.C. Cir. 2019).

Under the TCA, FDA must issue a marketing order for any tobacco product to be lawfully commercially marketed if that product was not commercially marketed as of February 15, 2007. 21 U.S.C. § 387j(a)(1)(A), (a)(2). To obtain a marketing order, manufacturers of electronic cigarettes must submit a premarket tobacco product application ("PMTA") to FDA. *See* 81 Fed. Reg. at 28990-97.

Because millions of electronic cigarette products were already commercially marketed as of the Deeming Rule's effective date, FDA adopted a discretionary enforcement policy that allowed for a delayed compliance period for electronic cigarette products. *See* 81 Fed. Reg. at 29009-15. Under this policy, electronic cigarette models on the market as of August 8, 2016, would not be subject to FDA enforcement action so long as manufacturers submitted a PMTA by August 8, 2018. 81 Fed. Reg. at 28977-78, 29011.

FDA's PMTA submission deadline subsequently changed multiple times over the succeeding years. *See Vapor Technology Ass'n v. FDA*, 977 F.3d 496, 497-502 (6th Cir. 2020) (describing district court litigation around deadline). Ultimately, FDA specified that if an electronic cigarette was the subject of a PMTA submitted

by September 9, 2020, the manufacturer could continue to market that product for an additional period of up to one year, provided FDA had taken no adverse action on the pending application. *See* Appx176-Appx177.

As a result, electronic cigarette devices sold without any nicotine-containing e-liquid but intended or reasonably expected to be used with nicotine that were not commercially marketed in the United States as of August 8, 2016, are "adulterated" tobacco products under the FDCA and their sale is illegal unless and until FDA issues them a marketing order. 21 U.S.C. §§ 387b(6)(A), 331.

VPR has never received a marketing order from FDA, including for its ELF electronic cigarettes. *See* Appx136; Appx145-Appx148.

## II. DISTRICT COURT PROCEEDINGS

### A. VPR's Complaint and Motion for Preliminary Injunction

VPR filed its original complaint on October 13, 2022 (ECF No. 1), and its first amended complaint ("FAC") on December 16, 2022. ECF No. 61; Appx63-Appx104. VPR alleges that it engages in the development of electronic cigarettes, "which are devices that deliver nicotine or cannabis," and that on November 24, 2017, it began marketing a line of such products under the ELF brand name and logo. Appx66-Appx67.

On June 5, 2018, VPR obtained U.S. Trademark Registration No. 5,486,616 in international class 34 for use of the mark ELF in connection with "Electronic

cigarette lighters, Electronic cigarettes; Smokeless cigarette vaporizer pipe." Appx67; Appx88.

VPR "exclusively" uses the ELF mark on two lines of electronic cigarettes: (1) the ELF Original Auto Draw Conceal Kit, which VPR describes as a "reusable (non-disposable) bar-shaped e-cigarette featuring a buttonless design, high-capacity battery, and a high-end aluminum body," Appx68; and (2) "high capacity e-cigarette batteries designed to be connected to industry standard refillable 510 mouthpieces," A89. VPR alleged that Defendants manufactured and sold competing electronic cigarettes under the brand ELFBAR. *See generally* Appx63-Appx104.

On October 14, 2022, VPR moved for a preliminary injunction on its claims for (1) trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a); (2) trademark infringement, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) common law unfair competition. *See* ECF No. 5. The amended complaint also includes claims for patent infringement, the basis for this Court's jurisdiction, and violations of 15 U.S.C. § 1125(d), *see* Appx82-Appx84, but VPR did not rely on these claims in moving for a preliminary injunction.

**B. The Evidentiary Hearing**

The district court held an evidentiary hearing over two days on VPR's motion in November and December 2022.

### 1. VPR's ELF-Brand Electronic Cigarettes

VPR's CEO, Kevin Frija, testified that, at the earliest, VPR placed its initial purchase order with a Chinese manufacturer for, and began marketing, electronic cigarettes under the "ELF" mark in November 2017. Appx120; Appx124-Appx125. A product catalog on VPR's website stated that electronic cigarettes are "electronic devices which deliver nicotine through atomization, or vaping of e-liquids and without smoke and other chemical constituents typically found in traditional tobacco burning cigarette products." Appx225.

Frija testified that VPR marketed its ELF-branded electronic cigarettes without applying for or obtaining marketing authorization from FDA. Appx130-Appx131; Appx136. Frija testified that he expects that consumers use VPR's ELF products with nicotine. *Id.*; Appx137-Appx138.

### 2. Defendants' Expert Testimony

Defendants presented expert testimony that confirmed that FDA's broad definition of "tobacco product" includes components and parts that do not contain nicotine if the vaporizer is intended or *reasonably expected* to be used with the consumption of a tobacco product, including nicotine containing e-liquids. Appx261-Appx264. Based in part on Frija's testimony that he expects that consumers use VPR's ELF products with nicotine, the expert concluded that VPR's electronic cigarettes are tobacco products as defined in the FDCA. Appx263-

Appx265; Appx272-Appx273; Appx281-Appx283; Appx286; *see also* 21 U.S.C. § 321(rr); 21 C.F.R. § 1143.1; 81 Fed. Reg. at 28973, 28975, 29016. Defendants' expert confirmed that, because they were introduced after August 8, 2016, VPR's ELF electronic cigarettes were not eligible for FDA's deferred enforcement policy and required an FDA marketing order before they could be lawfully sold. Appx272; Appx283.

Defendants' expert testified that FDA has historically taken enforcement action against electronic cigarettes, that, like VPR's, do not contain nicotine, including in the form of warning letters. Appx264; Appx273-Appx274; Appx276-Appx283; *see* Appx216-Appx223; Appx235-Appx248. He testified that FDA commonly uses waning letters to signal that a particular product appears to be an unauthorized new tobacco product. Appx260-Appx263. The expert opined that VPR's marketing of its ELF electronic cigarettes was a *per se* violation of the FDCA because the products are considered adulterated and unlawfully marketed in violation of the FDCA. Appx281-Appx284; *see also* 21 U.S.C. § 387b(6)(A); 21 U.S.C. § 331(a).

VPR did not proffer any expert opinions to challenge those of Defendants' expert.

### C. The District Court's Order

On February 23, 2023, the district court granted VPR's motion for preliminary injunction. Appx1-Appx32. Two fundamental conclusions of law underpinned the preliminary injunction: (1) the district court would not adopt the "unlawful use doctrine"; and (2) it is the responsibility of the Trademark Trial and Appeal Board ("TTAB"), not the district court, to determine when and how to apply the doctrine. Appx6-Appx12. In reaching its conclusion, the district court relied upon the Eleventh Circuit's decision in *FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071 (11th Cir. 2016), to not adopt the "unlawful use doctrine," but acknowledged that the Eleventh Circuit reached that conclusion "because the party asserting [the doctrine] had not submitted sufficient evidence in the district court to raise an issue of fact about plaintiff's allegedly unlawful use." Appx9.

Discounting the uniform holdings of this Circuit and the Ninth and Tenth Circuits, as well as numerous district court decisions across various circuits, including in the Southern District of Florida, the district court instead relied largely on an opinion from the Northern District of Georgia. Appx11 (citing *Hi-Tech Pharmaceuticals, Inc. v. Dynamic Sports Nutrition, LLC*, No. 16-cv-00949, 2020 WL 10728951 (N.D. Ga. Jan. 10, 2020)). The district court agreed with the *Hi-Tech* court that the TTAB is the "primary vehicle for cancellation of registered marks." *Id.* Despite VPR's allegations in its complaint, Frija's admissions, and the unrebutted

opinions of Defendants' expert, the district court also concluded that it could not determine whether VPR's electronic cigarettes violated the FDCA or its applicable regulations without "extrapolations and inferences from the present record [] which is a matter best left for the FDA in any event." Order at 11-12. The district court did not identify what, if any, additional evidence it would need to determine that VPR's products introduced after August 8, 2016, and sold without a marketing order or PMTA violate the FDCA. Appx11-Appx12.

The district court found the other relevant factors favored VPR and, despite VPR's lack of evidence that it had lost any sales as a result of Defendants' sales of ELFBAR products, and the evidence of substantial damages to be suffered by Defendants, the court rejected Defendants' request for a $200 million bond and set the bond at only $500,000. Appx14; Appx29-Appx31.

## SUMMARY OF ARGUMENT

The district court erred by not adopting the "unlawful use doctrine" and applying it to find VPR had *per se* violated the FDCA through its sales of its ELF electronic cigarettes. Had the Court adopted and applied the doctrine, it would have necessarily concluded that VPR did not have a substantial likelihood of success on the merits because it lacked a valid and enforceable trademark. And, accordingly, VPR would not have been entitled to a preliminary injunction.

## STANDARD OF REVIEW

This Court reviews preliminary injunction orders under the law of the regional circuit in which the district court sits. *Nitro Leisure Prods., LLC v. Acushnet Co.*, 341 F.3d at 1359. On substantive issues of trademark infringement, the Court also defers to the laws of the regional circuit. *Id.* Where a regional circuit court has not spoken on a question of substantive law, the Court must "predict how that regional circuit would have decided the issue in light of the decision of that circuit's various district courts, public policy, etc." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984); *see also AstraZenca LP v. Breath Ltd.*, 542 F. App'x 971, 982 (Fed. Cir. 2013) (considering Third Circuit decisions on similar, but not directly on point, bond issues, to determine how it would address retroactive increases in bond amounts before injunction had dissolved).

While the Eleventh Circuit generally reviews grants of preliminary injunctions for an abuse of discretion, it "review[s] any underlying legal conclusions *de novo*." *Curling v. Raffensperger*, 50 F.4th 1114, 1120-21 (11th Cir. 2022) (citation omitted).

## ARGUMENT

### I. THE UNLAWFUL USE DOCTRINE HAS BEEN WIDELY ADOPTED BY ARTICLE III COURTS

This Circuit, as well as the Ninth and Tenth Circuits, has clearly held that ownership of a legally protectable trademark requires *lawful* use of the trademark in

commerce. *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526 (Fed. Cir. 1987) ("A valid application cannot be filed at all for registration of a mark without 'lawful use in commerce.'"); *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) ("It has long been the policy of the PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful*. . . . [W]e also agree with the PTO's policy and hold that only *lawful* use in commerce can give rise to trademark priority."); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000) (observing that "shipping goods in violation of federal law cannot qualify as the 'use in commerce' necessary to establish trademark rights" and suggesting that had the plaintiff sold its fumigant product without registering with the EPA, the defendant would have had a strong case that the plaintiff did not have a right in the trademark).

Several district courts within the Eleventh Circuit have recognized the unlawful use doctrine. *See Plant Food Sys. v. AgroSource, Inc.*, No. 16-cv-80326, 2016 U.S. Dist. LEXIS 124185, *57 (S.D. Fla. Sept. 12, 2016) (recommending denial of motion for preliminary injunction in part because plaintiff's fertilizer product labels contained language similar to language already found to make improper pesticidal claims by the EPA); *Craft Kratom Lab, Inc. v. Mancini*, No. 11-cv-80987, 2013 U.S. Dist. LEXIS 105852 (S.D. Fla. July 29, 2013) (finding plaintiff had no valid trademark used on incense because plaintiff fraudulently

misrepresented that it was not for human consumption but plaintiff's principals admitted that they intended the product to be used for human consumption); *Davidoff Extension S.A. v. Davidoff Int'l, Inc.*, 612 F. Supp. 4, 7-8 (S.D. Fla. 1984) (applying unlawful use doctrine in context of a trademark cancellation but finding that defendants failed to prove "unlawful use" by clear and convincing evidence).

Multiple district courts around the country, including in other circuits, have enforced the "lawful use" requirement to adjudicate rights and priority in trademark infringement disputes. *See*, *e.g.*, *NYcityVan, LLC v. Thomas*, 501 F. Supp. 3d 145, 148-149 (E.D.N.Y. 2020); *AOP Ventures, Inc. v. Steam Distrib., LLC*, EDCV 15-1586-VAP (KKx), 2016 U.S. Dist. LEXIS 193035, **14-15 (C.D. Cal. 2016) (holding that sale of bottles of nicotine-containing e-liquid was unlawful and did not give rise to trademark priority because labels failed to include California Proposition 65 warning of reproductive harm), *reconsideration granted in part and vacated on other grounds*, 2016 U.S. Dist. LEXIS 202438 (C.D. Cal. Dec. 27, 2016); *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) (Chin, J.) (observing that "a party that is in violation of the Food, Drug and Cosmetic Act . . . for not complying with federal labeling regulations cannot obtain a federally registered trademark, nor can it maintain or enforce a previously obtained trademark"); *Erva Pharm., Inc. v. Am. Cyanamid Co.*, 755 F. Supp. 36, 40 (D.P.R. 1991).

While other district courts have declined to adopt the unlawful use doctrine, *no* Circuit Court of Appeals, including the Eleventh Circuit, has squarely rejected it. In *FN Herstal SA*, 838 F.3d 1071, the Eleventh Circuit acknowledged the existence of the doctrine, but found it need not determine whether to accept or reject the doctrine, as "even if we were to adopt it [defendant] has not submitted evidence sufficient to raise an issue of fact in this respect," *id*. at 1086-87. The Fifth Circuit likewise has not *rejected* the unlawful use doctrine, but, in a brief discussion, similarly declined to adopt and apply it in a case in which it held that the district court had otherwise erred in its abandonment analysis. *See Perry v. H.J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 474-475 (5th Cir. 2021). Indeed, the Fifth Circuit's decision not to adopt and apply the unlawful use doctrine was of such a non-binding nature that a district court within the Fifth Circuit subsequently adopted and applied the doctrine because there was "lack of binding authority from the Fifth Circuit regarding the unlawful use doctrine." *I&I Hair Corp. v. Beauty Plus Trading Co.*, No. 3:20-cv-02719-M, 2021 U.S. Dist. LEXIS 168620, **4-5, 8-9 (N.D. Tex. July 13, 2021) (in denying motion to dismiss counterclaim that sought to invalidate plaintiff's trademark for unlawful use, noting *Perry* and holding that "[i]n light of the lack of binding authority from the Fifth Circuit regarding the unlawful use doctrine . . . applying the TTAB's unlawful use doctrine at this stage in the pleadings . . . is appropriate").

And like in *FN Herstal*, the district courts in the Eleventh Circuit that have chosen not to adopt the lawful use doctrine have typically done so in circumstances where the doctrine would be procedurally improper or the case could be resolved on other grounds. *See Roor Int'l BV v. Kinan Shouk, Inc.*, No. 3:19-cv-00027-J-20MCR, 2019 U.S. Dist. LEXIS 178638, *5 (M.D. Fla. July 31, 2019) (observing that applying doctrine at motion to dismiss stage would require consideration of plaintiff's product website for consumers in the Netherlands, which was extrinsic to complaint); *Hi-Tech Pharms.*, 2020 WL 10728951 (finding factual questions existed as to whether the plaintiff's product label disclosed a chemical ingredient that would render the product violative of the Federal Food, Drug and Cosmetic Act ("FDCA") or contained enough of a prohibited steroid to violate the Controlled Substances Act); *Sream, Inc. v. Habsa Enter.*, No. 16-81662-CIV, 2018 U.S. Dist. LEXIS 16741, *5 (S.D. Fla. 2018) (declining to adopt doctrine where claimed basis—Florida fictitious name registration statute—did not apply to plaintiff California corporation).

The Eleventh Circuit's decision in *FN Herstal* that it did not need to decide whether to adopt the unlawful use doctrine did not bind the district court and does not bind this Court. The facts here align with those instances in which courts have adopted and applied the doctrine. Unlike in *FN Herstal* or the *Hi-Tech* case out of the Northern District of Georgia on which the district court relied, Defendants

submitted sufficient, unrebutted evidence not only to surmount the "clear and convincing evidence" standard as to whether VPR's sales of its ELF electronic cigarettes were *per se* violations of the FDCA, but to definitively prove that they were. Because VPR's ELF electronic cigarettes that VPR's CEO admitted he expects are used with nicotine were introduced after August 8, 2016, lack a marketing order, and are not the subject of a PMTA, they are an "adulterated" tobacco product and their sale is a *per se* violation of 21 U.S.C. § 331(a).

## II. THE LAWFUL USE REQUIREMENT IS PROPERLY APPLIED TO THE UNDISPUTED FACTS HERE

This case fits with those cases in which the unlawful use doctrine has been adopted and applied—the unrebutted evidence clearly and convincingly established that VPR's sales of ELF electronic cigarettes were *per se* violations of the FDCA, and so adoption and application of the doctrine would be determinative. The FDCA and 21 C.F.R. § 1143.1 require the conclusion that VPR's ELF electronic cigarettes are a tobacco product because, as VPR's CEO admitted, even though they are sold empty, VPR knows and expects that consumers use them with nicotine. Appx122; Appx137-Appx138. FDA expressly listed "batteries," "tank systems," and "tanks" as examples of tobacco product components or parts subject to the FDCA. 81 Fed. Reg. at 28975, 29028, 29041. Title 21 U.S.C. § 387j, in conjunction with the Deeming Rule's deferred enforcement policy, required VPR to obtain a marketing order for its products if they were not commercially marketed by August 8, 2016.

VPR's CEO admitted that its ELF electronic cigarettes were not commercially marketed until November 2017, Appx120; Appx124-Appx125; were sold without the FDA-required marketing authorization; and that VPR did not even apply for marketing authorization; Appx136.

Apart from its passing comment regarding "extrapolations and inferences from the present record," Appx12, the district court failed to address whether VPR's sales of its ELF electronic cigarettes were a *per se* violation of the FDCA, instead focusing repeatedly on the fact that the FDA had never *found* such a violation. Appx8; Appx11-Appx12. But there is no "extrapolation" or "inference" left to make. Appx12. Proving unlawful use requires either that "the issue of compliance has previously been determined (with a finding of non-compliance) by a court or government agency having competent jurisdiction" *or* that "there has been a per se violation of a statute regulating the sale of a party's goods." *FN Herstal*, 838 F.3d at 1087 (internal quotation omitted). Defendants only needed to prove the latter, which they did.

Unlike cases where questions existed regarding the sufficiency of the evidence to support a finding of unlawful use if the doctrine were adopted, here the evidence was unrebutted and came directly from VPR itself. VPR needed to obtain a marketing order before it introduced its electronic cigarette products into

commerce, but failed to do so. Thus, its ELF electronic cigarettes were and are illegally on the market in violation of the FDCA.

And while the testimony of Appellants' expert may have provided context for how FDA interprets and enforces the FDCA, his opinions were not necessary to, nor the basis for, Appellants' contention that VPR's sales of ELF electronic cigarettes constitute a *per se* violation of the FDCA. VPR's own allegations and the testimony of its CEO sufficiently established these facts.

The district court's failure to consider both this evidence and the evidence from FDA Warning Letters the subject of which was similar electronic cigarettes that likewise lack any nicotine-containing substance was clear error. Appx216-Appx223; Appx235-Appx248. Indeed, the district court even mischaracterized the expert's testimony when it stated that the expert testified he had not "seen an example of an FDA enforcement proceeding against a product 'just like this.'" Appx8 n.10. As the immediately following testimony illustrates, Appellants' expert was saying he was "not aware of a circumstance where somebody had testified and said, I expect that my consumers will use this with tobacco or with nicotine[.]" *See* Appx283. Typically, principals of companies violating the FDCA do not readily testify that their products are reasonably expected to be used with nicotine. Instead, FDA must infer or determine the products' use based on a variety of facts. Here, however, VPR's CEO directly admitted that he expected VPR's ELF electronic

cigarettes to be used with nicotine, thereby subjecting them to the FDCA. When the evidence is actually considered, and not ignored or intentionally mischaracterized, no further extrapolations or inferences are required to find a *per se* violation by VPR.

VPR's flouting of the TCA's premarket authorization requirements for every single unit of its ELF electronic cigarettes sold is exactly the type of material violation of "such gravity and significance that the [trademark] usage must be considered unlawful—so tainted that, as a matter of law, it could create no trademark rights." *FN Herstal SA*, 838 F.3d at 1087 (quoting *Gen. Mills, Inc. v. Health Valley Foods*, 1992 TTAB LEXIS 37, *10-11, 24 U.S.P.Q.2D (BNA) 1270, 1274 (Trademark Trial & App. Bd. May 1, 1992)); *accord Dessert Beauty*, 617 F. Supp. 2d at 190-94 (Chin, J.) (concluding sales of cosmetics in violation of FDA labeling regulations were a potentially sufficient basis for unlawful use and finding disputed issues of fact regarding compliance); *Erva Pharm.*, 755 F. Supp. at 39-42 (granting defendant's motion for summary judgment on grounds of unlawful use because plaintiff's product was a misbranded drug and plaintiff failed to properly register and list its product with FDA). The district court's injunction sharply contradicts the "spirit of the Lanham Act and the common law of trademark" since it "put[s] the government in the anomalous position of extending the benefits of trademark protection to [VPR] based upon actions [VPR] took in violation of . . . [the]

government's laws." *NYcityVAN*, 501 F. Supp. 3d at 149 (quoting *CreAgri*, 474 F.3d at 630).

The district court further erred in reasoning that it should decline to adopt the doctrine because the cancellation of trademarks is the "primary responsibility" of the TTAB and the Lanham Act "makes the TTAB the primary vehicle for cancellation of registered marks." Appx9-Appx10; Appx11. Not only is illegality an affirmative defense expressly recognized in Federal Rule of Civil Procedure 8(c), but "the Lanham Act expressly gives district courts the power to cancel federal trademarks issued by the PTO when they violate the Lanham Act." *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1169 (11th Cir. 2019) (citing 15 U.S.C. § 1119); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 155 (2015) ("[D]istrict courts can cancel registrations during infringement litigation, just as they can adjudicate infringement in suits seeking judicial review of registration decisions."). Indeed, any decision by the TTAB may be reviewed *de novo* by a district court under Section 21(b) of the Trademark Act, 15 U.S.C. § 1071. *See, e.g.*, *Whopper-Burger, Inc. v. Burger King Corp.,* 171 USPQ 805, 807 (TTAB 1971) ("A decision by the United States District Court would be binding on the Patent Office whereas a determination by the Patent Office as to respondent's right to retain its registration would not be binding or *res judicata* in respect to proceedings pending before the Federal District Court.").

In its order, the district court relied on *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014). But there, the Ninth Circuit noted that cancellation may "be sought if there is already an ongoing action that involves a registered mark." *Id*. This case is also similarly postured as *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1111 (9th Cir. 2006), where a party sought cancellation of a trademark in its counterclaim, and which was quoted by the district court for the proposition that "Section 37 of the Lanham Act, 15 U.S.C. § 1119, permits district courts to resolve these subsidiary registration disputes when joined with an infringement claim." As in that case, Appellants will need to assert a declaratory action for cancellation of VPR's ELF mark as a compulsory counterclaim.

The district court's reasoning would essentially allow VPR, or any future party that obtains a trademark registration without lawful use, to evade meaningful review of the registration's validity while pursuing claims for infringement. Under 37 C.F.R. § 2.117(a), the TTAB typically suspends cancellation proceedings once advised of a parallel district court infringement action; if the district court refuses to adopt or apply the doctrine, parties like Defendants will be deprived of any forum whatsoever to challenge the validity of the registration until after the infringement case proceeds to judgment. This practical policy implication also supports adopting and applying the unlawful use doctrine here.

## III. ADOPTION AND APPLICATION OF THE UNLAWFUL USE DOCTRINE IS CONSISTENT WITH THE FDCA

Applying the unlawful use doctrine, and requiring VPR to have lawful use of its ELF Mark, in the circumstances presented here is also consistent with the FDCA.

*First*, application of the unlawful use doctrine here is consistent with the FDCA because Appellants have only raised the doctrine as a defense, not as an affirmative claim for relief. The FDCA provides for several types of proceedings that may be brought to enforce or restrain violations of the Act. For example, a district court may enter an injunction prohibiting a defendant who has violated the Act from continuing to manufacture or sell FDA-regulated products or order the seizure and destruction of the offending products, 21 U.S.C. §§ 332(a), 334; *see, e.g.*, *United States v. Innovative BioDefense, Inc.*, 2020 U.S. Dist. LEXIS 155959 (C.D. Cal. May 4, 2020) (entering injunction against a company that had violated the FDCA by selling non-FDA-approved drugs).

"[A]ll such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States." 21 U.S.C. § 337(a). In other words, "no private right of action exists for a violation of the FDCA." *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284 n.10 (11th Cir. 2002). As a result, courts often dismiss claims brought by plaintiffs that are based on a defendant's alleged violation of the FDCA. *See, e.g.*, *Keller v. Strauss*, 480 F. App'x 552, 554 (11th Cir.) (per curiam) ("Accordingly, to the extent that [plaintiff] brought claims for the

enforcement or to restrain violations of the FDCA, the district court was proper to dismiss them.").

But Section 337(a) does not apply here because Appellants have not brought a *claim* for enforcement or to restrain a violation of the FDCA. Rather, Appellants simply raised an *affirmative defense* to VPR's claims. An "affirmative defense" is "quite different from a claim." *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264 (11th Cir. 1999). A claim is "essentially an action which asserts a right to payment" or other relief, while an "affirmative defense" is "offered and alleged by the defendant as a reason in law or fact why the plaintiff should not recover or establish what he seeks." *Id.* (cleaned up); *compare also* Fed. R. Civ. P. 8(a) (discussing "claim[s] for relief") *with* Fed. R. Civ. P. 8(c) (discussing "affirmative defense[s]," including "illegality"). Thus, by its plain text, 21 U.S.C. § 337(a)'s prohibition on private claims does not apply to Appellants' affirmative defense of unlawful use.

Appellants are not seeking to enforce the FDCA by requiring VPR to remove its products from the market or pay monetary compensation based on VPR's sales of illegal products. Similarly, Appellants are not making an affirmative claim against VPR for violating the Lanham Act by selling ELF electronic cigarettes in violation of the FDCA. *See Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817 (W.D. Tex. 2001).

The rationale for prohibiting private parties from bringing claims to enforce or restrain violations of the FDCA does not apply to Appellants' assertion of the affirmative defense of unlawful use. Allowing private parties to recover monetary damages for a defendant's violations of the FDCA or to obtain an injunction preventing a defendant from selling its products may interfere with the government's own enforcement strategies. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001) (noting that FDA's enforcement strategies "can be skewed by allowing [private parties to bring] fraud-on-the-FDA claims"). But permitting Appellants to defeat VPR's claims by asserting the unlawful use doctrine as an affirmative defense would not affect the government's enforcement strategy with respect to electronic cigarettes.

*Second*, Article III courts, not federal executive branch agencies, have the ultimate say on whether a party's conduct violates a federal statute. Indeed, federal courts routinely adjudicate disputes wherein FDA asserts that a party has violated the FDCA or, conversely, a party asserts that FDA has wrongfully found it to have violated the FDCA and taken some enforcement action. *See*, *e.g.*, *United States v. Cal. Stem Cell Treatment Ctr.*, No. 18-cv-1005, 2022 U.S. Dist. LEXIS 156714 (C.D. Cal. 2022) (denying FDA's request for injunction based on allegations that stem cell treatments cause adulteration and misbranding of drugs); *United States v. Utah Med. Prods.*, 404 F. Supp. 2d 1315 (D. Utah 2005) (finding medical device

manufacturer in compliance with FDA quality system regulations and denying FDA's request for permanent injunction); *Smoking Everywhere, Inc. v. United States FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), *aff'd*, *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010) (granting preliminary injunction against FDA's denial of entry of electronic cigarettes into United States on grounds they were unapproved drug-device combination products).

Therefore, when a defendant raises the affirmative defense of unlawful use in a Lanham Act case such as this one, courts have an obligation to determine whether the plaintiff's use of the trademark in question was lawful. *See, e.g.*, *Dessert Beauty*, 617 F. Supp. 2d at 189-94; *Erva Pharms*, 755 F. Supp. at 39-42.

The fact that FDA has not initiated an enforcement action against VPR does not preclude this Court from determining whether VPR's conduct is legal. *See Altria Group, Inc. v. Good*, 555 U.S. 70, 89-90 (2008) ("agency nonenforcement of a federal statute is not the same as a policy of approval"); *Allergan United States v. Imprimis Pharms., Inc.*, No. 17-cv-01551, 2017 U.S. Dist. LEXIS 223117, *23 (C.D. Cal. Nov. 14, 2017) ("As an executive agency, the FDA has discretion to enforce the law, but the lack of enforcement does not make [defendant's] actions legal.").

Adopting a position that only FDA can determine whether a product violates the FDCA in deciding whether a trademark registrant or applicant has lawful use would eliminate any lawful use requirement for any FDA-regulated product. It

would strip trademark examiners and the TTAB of the ability to decide whether an applicant had lawful use in commerce for an FDA-regulated product because the legality of the products would be strictly decided by FDA. The Court should reject such a conclusion as not supported by the plain text of either the FDCA or the Lanham Act.

## CONCLUSION

For the foregoing reasons, the district court erred in failing to adopt and apply the unlawful use doctrine, and consequently granting the preliminary injunction in favor of VPR Brands, LP. Accordingly, the Court should vacate the preliminary injunction entered by the district court.

Dated: May 24, 2023

Respectfully Submitted,

THOMPSON HINE LLP

By: /s/ Eric N. Heyer

Eric N. Heyer
eric.heyer@thompsonhine.com
Joseph A. Smith
joe.smith@thompsonhine.com
Michelle Li
michelle.li@thompsonhine.com
1919 M Street, NW, Ste. 700
Washington, DC 20036
Phone: (202) 331-8800
Fax: (202) 331-8330

Carrie Shufflebarger
carrie.shufflebarger@thompsonhine.com

Thompson Hine LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
(513) 352-6700

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume requirement set forth in Federal Rule of Appellate Procedure 32. The word count feature found in Microsoft Word reports that Appellants' Corrected Principal Brief contains 5,956 words.

/s/ Eric N. Heyer
Eric N. Heyer

**CERTIFICATE OF SERVICE**

I certify that on May 25, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Joel B. Rothman, Esq.
SRIPLAW, P.A.
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com
*Counsel for Plaintiff-Appellee*

/s/Eric N. Heyer
Eric N. Heyer

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS


| DOCUMENT | ECF NO. | APPX. |
|---|---|---|
| Order Granting Plaintiff's Motion for Preliminary Injunction and Denying Defendants' Motion to Reopen | 83 | 1 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 22-81576-CIV-CANNON**

**VPR BRANDS, LP**,

Plaintiff,

v.

**SHENZHEN WEIBOLI TECHNOLOGY CO. LTD. et al.**,

Defendants.

_______________________________/

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF No. 5] AND DENYING DEFENDANTS' MOTION TO REOPEN [ECF No. 76]**

**THIS CAUSE** comes before the Court upon Plaintiff's Motion for Preliminary Injunction (the "Motion") [ECF No. 5], filed on October 14, 2022. The Motion asks the Court to enter a preliminary injunction enjoining Defendants from using Plaintiff's ELF trademark or any substantially similar imitation design; selling any products using the ELF trademark; and advertising or marketing any products using the ELF trademark [ECF No. 5 p. 18]. The Court held a hearing on the Motion on November 18, 2022, and December 1, 2022 [ECF Nos. 39, 46, 52, 60]. At the hearings, the Court admitted evidence and heard witness testimony [ECF Nos. 46, 54, 55, 56, 57, 58, 60]. The Court has reviewed the Motion, Defendants' Response in Opposition [ECF No. 32], Plaintiff's Reply [ECF No. 34], Plaintiff's Proposed Findings of Fact and Conclusions of Law [ECF No. 66], Defendants' Proposed Findings of Fact and Conclusions of Law [ECF No. 65], and the full record. For the reasons set forth below, the Motion [ECF No. 5] is **GRANTED**, and Defendants' Motion to Reopen the Evidentiary Hearing [ECF No. 76] is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff VPR Brands, LP ("Plaintiff") manufactures electronic cigarettes ("e-cigarettes") and related products [ECF No. 1 ¶¶ 10–11]. Plaintiff has marketed a line of e-cigarettes and accessories under the mark ELF since November 24, 2017 [ECF No. 1 ¶¶ 13–14]. Plaintiff obtained a trademark in the ELF mark from the United States Patent and Trademark Office ("USPTO") on June 5, 2018 [ECF No. 1 ¶ 15; ECF No. 1-1]. The trademark allows Plaintiff to use the mark "in connection with 'Electronic cigarette lighters; Electronic cigarettes; [and] Smokeless cigarette vaporizer pipe'" [ECF No. 1 ¶ 15; ECF No. 1-1]. Plaintiff currently markets two products under the ELF mark: (1) the ELF Original Auto Draw Conceal Kit, "a reusable (non-disposable) bar-shaped e-cigarette"; and (2) a high-capacity e-cigarette battery for use with the "industry standard refillable 510 mouthpieces" [ECF No. 1 ¶¶ 19, 22]. The ELF Original Auto Draw Conceal Kit is "a square box vaporizer with a mouthpiece attached to the top," which allows the consumer to inhale products such as essential oils, nicotine, and other products [ECF No. 46 pp. 18:4–8, 19:7–9; *see also* ECF No. 38-2 (photo of ELF Original Auto Draw Conceal Kit)]. The vaporizer is sold empty, without liquid [ECF No. 46 p. 20: 19–20], and it is reusable, allowing the consumer to "use [the] product for the lifespan of the rechargeable battery" [ECF No. 46 p. 25:16–22].

Defendant Shenzhen Weiboli Technology Co. Ltd. ("Weiboli") is a Chinese manufacturer of e-cigarettes that markets its e-cigarettes under the name ELFBAR [ECF No. 1 ¶¶ 39, 41]. The ELFBAR product is an e-cigarette disposable vaporizer that is made out of plastic and comes "pre-filed with nicotine e-liquid" [ECF No. 46 p. 34:14–19; *see also* ECF No. 56 (ELF product)].[1]

[1] Plaintiff's ELF Auto Draw Conceal Kit is classified as an "open system," which allows a user to refill the tank and is re-usable, as opposed to a disposable e-cigarette product similar to Defendants' ELFBAR product [ECF No. 60 pp. 63:23–25, 64:1–6].

The other seven Defendants operate as Weiboli's wholesale distributors of the ELFBAR products within the United States [ECF No. 1 ¶¶ 42–55].

Plaintiff alleges that Weiboli's distribution of the ELFBAR e-cigarette products infringes on Plaintiff's ELF trademark, because it is "confusingly similar to Plaintiff's ELF Mark as applied to e-cigarette products, and is likely to cause confusion among consumers, retailers and distributors in the United States" [ECF No. 1 ¶ 65]. Plaintiff alleges that Weiboli was on notice of this likelihood of confusion after the USPTO, on July 19, 2021, rejected Weiboli's application to register the ELFBAR mark because it could result in confusion with Plaintiff's ELF mark [ECF No. 1 ¶ 70; ECF No. 38-3 (USPTO official letter refusing registration application "because of a likelihood of confusion with the mark in U.S. Registration No. 5486616," and then addressing similarity of the marks and relatedness of the goods and/or services)]. Weiboli nonetheless entered the U.S. market after the USPTO rejection and began to distribute its ELFBAR e-cigarettes [ECF No. 1 ¶ 72].[2] Weiboli abandoned its application to register the ELFBAR mark with the USPTO as of January 20, 2022 [ECF No. 1 ¶ 71].

On October 15, 2022, Plaintiff filed a four-count Complaint [ECF No. 1]. As relevant to Plaintiff's Motion for Preliminary Injunction [*see* ECF No. 5 p. 9], the Complaint asserts that (1) Defendants are liable for trademark infringement under the Lanham Act because Defendants' use of the ELFBAR mark is likely to cause confusion with Plaintiff's ELF mark in the marketplace [ECF No. 1 ¶¶ 100–07] (Count I – Trademark Infringement Under Section 32(a) of the Lanham Act, 15 U.S.C. § 114(a)); and (2) Defendants are liable for false designation of origin, because their use of the ELFBAR mark could cause confusion to consumers as to Plaintiff's affiliation with

[2] The Complaint does not specify the exact date (after July 19, 2021) when Weiboli entered the U.S. market, but a representative for one of the distributors (Demand Vape) testified at the hearing that it began distributing Weiboli's ELFBAR products in October 2021 [ECF No. 60 p. 88:10–12].

Defendants' products [ECF No. 1 ¶¶ 108–16] (Count II – Trademark Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)).[3]

On October 14, 2022, Plaintiff filed the instant Motion, seeking a preliminary injunction to enjoin Defendants from marketing their ELFBAR products or otherwise infringing on Plaintiff's trademark [ECF No. 5]. Following notice to Defendants, a hearing, and full briefing, the Motion is ripe for adjudication [ECF Nos. 32, 34, 65, 66; *see* ECF Nos. 28, 75].[4]

## LEGAL STANDARD

To obtain preliminary injunctive relief, a party must establish the following elements: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). None of the four requirements "has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (citing

[3] Plaintiff also asserts claims for common law unfair competition against all Defendants (Count III), direct patent infringement against Weiboli (Count IV), and cybersquatting against Weiboli under the Lanham Act (Count V) [ECF No. 61]. On December 16, 2022, after the hearing on this Motion, Plaintiff filed a First Amended Complaint (the "FAC") to add a claim for cybersquatting against Weiboli under the Lanham Act [ECF No. 61]. The FAC does not alter Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act. Accordingly, given the procedural history of this case as relates to this Motion, citations in this Order to Plaintiff's complaint are to Plaintiff's original complaint, whose allegations as relevant here are unchanged.

[4] Of the eight named defendants, seven were served with the Complaint and the Motion prior to the first hearing on the Motion [ECF No. 28]. The remaining defendant, Unishow (U.S.A.), Inc., was served on January 30, 2023 [ECF No. 75], but appeared at the hearing and joined the opposition through counsel representing all Defendants in this action [ECF Nos. 16, 17, 26]. There is no suggestion of lack of notice as to Unishow.

*Siff v. State Democratic Exec. Comm.*, 500 F.2d 1307 (5th Cir. 1974)).[5]

A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites[,]" and '"[t]he burden of persuasion in all of the four requirements is at all times upon the plaintiff."' *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). "[A] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

To prevail on a trademark infringement claim, "a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Courts consider seven factors in determining whether a likelihood of confusion exists: (1) type of mark; (2) similarity of the mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Id.*

## DISCUSSION

Upon review of the Motion and the full record, the Court hereby enjoins Defendants from use of Plaintiff's ELF trademark through the selling of Defendants' ELFBAR products in the United States. In doing so, the Court first determines that Defendants' unlawful use argument lacks merit as a tool in this proceeding to invalidate and/or to declare Plaintiff's trademark

[5] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

unenforceable. Turning to the applicable factors for injunctive relief, the Court concludes that Plaintiff has carried its heavy burden to show that it is likely to succeed on the merits of its trademark infringement claim because its ELF mark has priority and because Defendants' ELFBAR mark is likely to cause consumer confusion. Without injunctive relief, Plaintiff has sufficiently established that it is likely to suffer irreparable injury; that the threatened injury to Plaintiff outweighs any harm the injunction will pose to Defendants; and that the preliminary injunction will serve the public interest. The Court addresses each aspect of the analysis in turn.

**I. Unlawful Use Doctrine**

At the outset, the Court rejects Defendants' lead argument to declare as unenforceable Plaintiff's trademark under the "unlawful use doctrine," which the Eleventh Circuit has not adopted [ECF No. 32 pp. 2–4, 7–9; ECF No. 65 pp. 5–6, 13–15]. As described by the Eleventh Circuit in *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071 (11th Cir. 2016), "[t]he 'unlawful use doctrine' appears almost exclusively in the administrative setting, originating in United States Trademark Trial and Appeal Board ("TTAB") proceedings to oppose trademark applications or cancel registrations." *Id.* at 1086.[6] Interpreting the definition of the phrase "use in commerce" in 15 U.S.C. § 1127, the TTAB has stated that "[a] mark ha[s] to comply with all applicable laws and regulations before a party may claim trademark protection for that mark." *Id.* at 1087 (internal quotation marks omitted).[7] A party using the "unlawful use doctrine" to oppose a trademark

[6] The TTAB's administrative trademark judges are authorized to determine a party's right to register a trademark with the federal government or to retain a registration under challenge. The TTAB does not determine questions of trademark infringement or unfair competition. *See generally About TTAB*, USPTO Website, https://www.uspto.gov/trademarks/trademark-trial-and-appeal-board/about-ttab.

[7] Section 1127 defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade" which may lawfully be regulated by Congress, specifying further that a mark "shall be deemed to be in use in commerce on goods when," as relevant here," "the goods are sold or transported in commerce," and separately defining "commerce" to mean "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127.

application or cancel a trademark application before the TTAB must prove by clear and convincing evidence that the mark being challenged is not entitled to trademark protection, because there has been "a finding of non-compliance[] by a court or government agency having competent jurisdiction under the statue involved, or where there has been a per se violation of a statute regulating the sale of a party's goods." *Id.*; *see* 37 C.F.R. § 2.111(b) (permitting "any person" to file a petition to TTAB for cancellation of trademark registration). A challenge under the "unlawful use doctrine" goes to the merits of a party's trademark rights.

As a defense to the Motion, Defendants argue that Plaintiff's "asserted ELF trademark is unenforceable due to illegality," because Plaintiff has not obtained FDA pre-marketing authorization to sell its ELF-branded products as required by 21 U.S.C. § 387j(a)(1)–(2).[8] In a nutshell, Defendants' position is that Plaintiff's ELF-branded products—i.e., the ELF-branded vaporizer and e-cigarette battery—qualify as "new tobacco products" for which "premarket review" is required, *see* 21 U.S.C. § 387j(a)(1)–(2), because they are "intended or reasonably expected" to be used "for the human consumption of a tobacco product."[9] The FDCA prohibits "the introduction or delivery for introduction into interstate commerce of any . . . tobacco product

[8] Chapter 9 of the Federal Food, Drug, and Cosmetics Act (FDCA) gives the FDA authority to regulate tobacco products. 21 U.S.C. § 387a.

[9] A "new tobacco product," includes, as relevant here, "(A) any tobacco product (including those products in test markets) that was not commercially marketed in the United States as of February 15, 2007," 21 U.S.C. § 387j(a)(1), and a "tobacco product," in turn, is defined as

> any product made or derived from tobacco, or containing nicotine from any source, that is intended for human consumption, including any component, part, or accessory of a tobacco product (except for raw materials other than tobacco used in manufacturing a component, part, or accessory of a tobacco product).

21 U.S.C. § 321(rr)(1). The FDA issued regulations, effective August 8, 2016, defining the terms "component or part" as "any software or assembly of materials intended or reasonably expected . . . [t]o be used with or for the human consumption of a tobacco product," even if it does not itself contain tobacco or is derived from tobacco. 21 C.F.R. § 1100.3.

. . . that is adulterated," 21 U.S.C. 331(a), and a "new tobacco product" without premarket authorization is considered an "adulterated product," 21 U.S.C. § 387(b). Hence, Defendants contend, Plaintiff's continued "marketing and sale of the [ELF] products is a *per se* violation of 21 U.S.C. § 331(a)," which means, in Defendants' view, that this Court should declare Plaintiff's registered ELF mark unenforceable in this proceeding [ECF No. 32 pp. 7–9; ECF No. 65 pp. 13–15]. Defendants do not dispute that there has been no finding by a court or government agency that Plaintiff is in violation of 21 U.S.C. § 331(a) or the pertinent regulations, and the record reflects neither a FDA proceeding against Plaintiff for its ELF products nor a TTAB declaration of unlawful use.[10] [11]

Acknowledging Defendants' argument and the absence of definitive guidance from the Eleventh Circuit, *see FN Herstal SA*, 838 F.3d at 1087, the Court permitted Defendants to make a record on this issue,[12] but the Court ultimately declines to apply the "unlawful use doctrine" to bar

[10] Defendants offered the testimony of Bryan Haynes, an expert in FDA marketing restrictions for tobacco products [ECF No. 60 pp. 13–54]. Mr. Haynes opined that Plaintiff's ELF products would be classified as "tobacco product components," because they are intended or reasonably expected to be used to consume a tobacco product and thus require pre-market authorization from the FDA [ECF No. 60 pp. 38:6–21, 39:12–23]. Mr. Haynes based his opinion in part on two FDA "Warning Letters" issued to other companies not implicated here, extrapolating from those letters that FDA would treat Plaintiff's products similarly [ECF No. 58-5; ECF No. 58-6]. Mr. Haynes acknowledged that he had not seen an example of an FDA enforcement proceeding against a product "just like this"; that he was not aware of an FDA enforcement action or warning letter specific to Plaintiff's ELF products [ECF No. 60 p. 47:8–14]; and that the application of the pre-marketing authorization requirement was "fact-specific and could depend on a variety of things" [ECF No. 60 p. 40:6–15]. As FDA's website indicates, warning letters are "issued for violations of regulatory significance that may lead to enforcement action if not promptly and adequately corrected." https://www.fda.gov/animal-veterinary/compliance-enforcement/advisory-action-letters.

[11] Defendants also do not have pre-market authorization to sell the ELFBAR e-cigarette products.

[12] [*see* ECF No. 60 pp. 13–54; ECF No. 58 (plus exhibits); ECF No. 46 pp. 91–94]

Plaintiff's Lanham Act infringement and unfair competition claims. The Court's reasoning is set forth below, guided by persuasive authorities.[13]

First, as stated, when given an opportunity to adopt the doctrine in the trademark infringement context, the Eleventh Circuit did not do so, characterizing it as appearing "almost exclusively in the administrative setting." *See FN Herstal SA*, 838 F.3d at 1086. Admittedly, the Eleventh Circuit ultimately declined to adopt the defense because the party asserting it had not submitted sufficient evidence in the district court to raise an issue of fact about plaintiff's allegedly unlawful use. *Id.* at 1087 ("This Court has not adopted the unlawful use doctrine and need not do so today because even if we were to adopt it, Clyde Armory has not submitted evidence sufficient to raise an issue of fact in this respect." (internal footnote omitted)). But even accepting that ultimate rationale, the Eleventh Circuit's caution signals caution here too, in an area of trademark

[13] *See Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 475 (5th Cir. 2021) ("[T]his court has not adopted the unlawful use doctrine—the doctrine that failing to abide by all laws and regulations can turn what would otherwise constitute 'use' into 'non-use.' We see no reason to adopt the doctrine here." (citing *FN Herstal SA*, 838 F.3d at 1086–88, and 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:12 (5th ed. 2021))); *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, No. 16-CV-00949, 2020 WL 10728951, at *6–7 (N.D. Ga. Jan. 10, 2020) (refusing to apply unlawful use doctrine to declare mark unenforceable in trademark infringement and false designation of origin and unfair competition case, noting that Eleventh Circuit has not adopted the doctrine, there is no private right of action under 21 U.S.C. § 331 and other statutes, Defendants had not established that a court or government agency had found Plaintiff's product non-compliant with the cited statutes or regulations, and Defendants had not established that Plaintiff's sale of its product "[c]onstitutes a per se violation" of federal law"); *RooR Int'l BV v. Kinan Shouk, Inc.*, No. 19-CV-00027, 2019 WL 5088742, at *2 (M.D. Fla. July 31, 2019) (on a motion to dismiss challenging Plaintiffs' standing based on alleged illegality of its product, refusing to apply unlawful use doctrine, citing *FN Herstal SA*, and declining to exercise discretion to convert motion to dismiss to motion for summary judgment).

registration and cancellation over which the TTAB holds primary responsibility,[14] and in an area of tobacco regulation over which the FDA exercises primary jurisdiction.[15]

Second, although Plaintiff cites some nonbinding authority supporting application of the "unlawful use" defense in a similar posture, *see CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007),[16] there are persuasive authorities pointing in the opposite direction, *Perry*, 994 F.3d at 475; *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, No. 16-CV-00949, 2020 WL 10728951, at *6–7 (N.D. Ga. Jan. 10, 2020); *RooR Int'l BV v. Kinan Shouk, Inc.*,

---

[14] *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (dismissing claim for cancellation of trademark registration because Section 37 of the Lanham Act it does not provide an independent basis for jurisdiction, referring to the TTAB as the "primary vehicle for cancellation" (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:110 (4th ed.))); *Beasley v. Howard*, 14 F.4th 226, 235–36 (3d Cir. 2021) ("Because the Lanham Act's cancellation provision, section 14(c), does not create an independent basis for a plaintiff to sue for cancellation in federal district court, a plaintiff . . . could not have selected the District Court as a forum to raise any invalidity arguments against Howard unless he could have maintained a trademark infringement claim in the District Court at the same time." (internal citation omitted)); *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 903 (8th Cir. 2016) (citing cases) ("EIP's standing to seek cancellation of the trademark under section 37 of the Lanham Act, codified at 15 U.S.C. § 1119, was dependent on its section 38 claim, because section 37 only provides a remedy for some other violation of the trademark laws, not an independent cause of action.").

[15] *See* 21 U.S.C. § 387a(a); *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body").

[16] Beyond *CreAgri*, Defendants principally cite out-of-circuit appellate authorities tangentially suggesting the idea of "unlawful use" as a defense to trademark infringement [ECF No. 32 p. 8 n.10 (citing *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526 (Fed. Cir. 1987) (in appeal of TTAB decision refusing concurrent use registration, referencing general principle that a valid application for registration of a trademark cannot be filed without "lawful use in commerce"), and *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (suggesting in dicta that a party, during a jury trial on trademark infringement, may have been entitled to a jury instruction on "lawful use" had party sold product in violation of EPA regulation)].

No. 19-CV-00027, 2019 WL 5088742, at *2 (M.D. Fla. July 31, 2019)—yielding, at best, a mixed landscape with no positive inclination from the Eleventh Circuit.

Third, on the merits, the Court has considered the matter and agrees with the court in *Hi-Tech Pharmaceuticals Inc. v. Dynamic Sports Nutrition, LLC*, No. 16-CV-00949, 2020 WL 10728951 (N.D. Ga. Jan. 10, 2020), that the unlawful use doctrine should not be wielded to do what Defendants seek in this infringement action—i.e., to essentially strip Plaintiff of its trademark property interest, without an independent basis to seek cancellation of Plaintiff's mark. Various considerations inform this conclusion. To begin, there is the already-stated observation that the "unlawful use doctrine" has its home in the administrative setting as a tool in TTAB proceedings to challenge registrations and/or to cancel previously issued registrations. *FN Herstal SA*, 838 F.3d at 1086. That makes sense and accords with the applicable regulatory structure, which makes the TTAB the primary vehicle for cancellation of registered marks. *Supra* note 14. Furthermore, as a related point, and as all parties agree, the FDCA does not provide for a private cause of action to enforce the requirements thereunder. 21 U.S.C § 337(a) (stating that actions brought to enforce FDCA "shall be by and in the name of the United States"); *Keller v. Strauss*, 480 F. App'x 552, 554 (11th Cir. 2012) (citing *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284 n.10 (11th Cir. 2002)); [*see also* ECF No. 60 p. 21:22–25]. Yet Defendants' request in this action largely does a run around that principle, giving Defendants the benefit of a declaration of a competitor's invalidity without going through the TTAB cancellation process, and of course without any finding of non-compliance by the primary regulatory of tobacco (FDA). *See Hi-Tech Pharms. Inc*, No. 16-CV-00949, 2020 WL 10728951, at *6 ("[T]here is no private right of action under the statutes Defendants cite. . . . Whether Plaintiff has violated the provisions of these statutes are matters best left for the applicable government agencies."). Finally, although Defendants have offered some support for its theory of Plaintiff's non-compliance, there is no evidence that the FDA has found

Plaintiff's e-cigarettes to be in violation of the FDCA or its applicable regulations. To reach that determination with clear and convincing evidence would require extrapolations and inferences from the present record, *see supra* note 10, which is a matter best left for the FDA in any event.

## II. Likelihood of Success on the Merits

As to the first element for a preliminary injunction, the Court finds that Plaintiff has established a likelihood of success on the merits on its trademark infringement claim. Plaintiff's ELF mark has priority over Defendant's use of the ELFBAR, and Defendants' use of ELFBAR to market their e-cigarette products creates a likelihood of confusion with Plaintiff's ELF mark.

### a. Priority

Plaintiff has met the first requirement for likelihood of success on the merits because Plaintiff has established that it has priority in the ELF mark. "Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015). Here, Plaintiff alleges that it first used the ELF mark in marketing its e-cigarettes on November 24, 2017 [ECF No. 1 ¶¶ 13–14]. Moreover, Plaintiff obtained a trademark registration for the ELF mark from the USPTO on June 5, 2018 [ECF No. 1 ¶ 15; ECF No. 1-1]. Defendants, however, did not begin using the ELFBAR mark in marketing e-cigarettes until around July 2021 [ECF No. 1 ¶¶ 71, 73]. As such, Plaintiff was the first to use the ELF mark in commerce. Defendants do not dispute this fact. The Court, therefore, finds that Plaintiff has priority for the ELF mark because it first used the mark in commerce.

### b. Likelihood of Confusion

The factors for establishing likelihood of confusion weigh soundly in favor of finding that Defendants' use of the ELFBAR mark is likely to cause confusion with Plaintiff's ELF mark. Plaintiff has demonstrated that the ELF mark is strong; that there is great similarity between the

ELF mark and Defendants' ELFBAR mark; that the products utilizing the mark are nearly identical; that both parties market their products to the same retail outlets and customers; that both parties utilize similar advertising media; and that Defendants manifested improper intent in adopting the ELFBAR mark. The Court addresses each factor in turn below.

*i. Type/Strength of Mark*

The first factor in assessing likelihood of consumer confusion is the strength of the allegedly infringed mark, which is an inquiry that proceeds in two parts: first, the Court classifies the mark as "generic," "descriptive," "suggestive," or "arbitrary," with "arbitrary" carrying the strongest protection, and then second, the Court considers "the degree to which third parties make use of the mark." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1256–57 (11th Cir. 2016). *Id.* at 1336. "'The less that third parties use the mark, the stronger it is, and the more protection it deserves.'" *Id.* at 1257 (quoting *Frehling Enters.*, 192 F.3d at 1336).

The evidence establishes that Plaintiff's ELF mark is a so-called "arbitrary" mark that receives greater trademark protection in the strength continuum of marks. There are four categories of marks—generic, descriptive, suggestive, and arbitrary—which are based on the relationship between the name and the service or good it describes. *Frehling Enters.*, 192 F.3d at 1335. "An arbitrary mark is a word or phrase that bears no relationship to the product." *Id.* Plaintiff argues that the ELF mark is arbitrary and thus worthy of the greatest trademark protection [ECF No. 5 pp. 11–12]. Plaintiff notes that ELF "had no significance in the electronic cigarette industry, prior to VPR's use of the ELF Mark" [ECF No. 5 pp. 11–12]. The Court agrees, and Defendants do not meaningfully dispute the conceptual strength of Plaintiff's mark [ECF No. 32 pp. 11–12]. The ELF mark does not bear any relationship to the product it is used on—e-cigarettes and related products. Given the arbitrary nature of the mark, Plaintiff's ELF mark falls in the "strongest of the four categories." *See Frehling Enters., Inc.*, 192 F.3d at 1336.

Turning to the "degree to which third parties make use of the mark," *id.*, the only evidence of third-party use is Defendants' use of the mark in marketing ELFBAR products. Nor do Defendants advance a theory about third-party use weakening Plaintiff's mark. Defendants do, however, dispute the commercial strength of Plaintiff's mark, arguing that Plaintiff's mark is commercially weak because of Plaintiff's low sales of ELF products within the e-cigarette industry [ECF No. 32 pp. 11–12]. Defendants then assert, as a counterpoint, that the ELFBAR mark has significant commercial strength as indicated by strong sales since Defendants introduced ELFBAR into the U.S. market [ECF Nos. 58-18, 58-19 (providing sales data of two of Defendants' distributors); *see* ECF No. 60 pp. 72:8–13, 98:18–24 (testimony about ELFBAR product being so popular that counterfeit products have sprung up when there has been a shortage of ELFBAR products on the market)]. As a rejoinder, Plaintiff does not contest that its sales are "paltry" when compared to Defendants' sales of the ELFBAR products [ECF No. 60 p. 126:13–16]. But Plaintiff maintains that its mark merits strong trademark protection even if it is less commercially successful. The Court agrees and declines to afford the ELF mark less trademark protection simply because Plaintiff's sales of the product are significantly less than Defendants' sales for the ELFBAR products. Defendants are not entitled to infringe on a validly registered trademark and then attempt to avoid consequences for that infringement by outperforming the trademark holder in sales. Plaintiff's ELF mark is a validly registered trademark [ECF No. 1-1], the mark can be categorized as arbitrary, and there has been no evidence of third parties, outside of Defendants, using the mark. Taken together, this speaks to the strength of the ELF mark, even acknowledging that Plaintiff's sales of its ELF products are much less than Defendants' sales of its allegedly infringing products. This factor weighs in favor of finding a likelihood of confusion.

*ii. Similarity of Mark*

The Court also determines that the ELF and ELFBAR marks are sufficiently similar to support a finding of likelihood of confusion. This factor "requires the factfinder to compare the plaintiff's marks with the defendant's marks and measure their similarity. The greater the similarity, the greater the likelihood of confusion." *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1260 (internal citations omitted). This does not require the marks to be identical, rather "the key question remains whether the marks are sufficiently similar 'to deceive the public.'" *Id.* (quoting *Saxlehner v. Eisner & Mendelson Co*., 179 U.S. 19, 33 (1900)). The court is to consider "the overall impression created by the marks" by using points of comparison such as "'the appearance, sound and meaning of the marks, as well as the manner in which the marks are used.'" *Id.* (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983)).

Plaintiff argues that the marks are sufficiently similar because both parties use the term ELF to identify their e-cigarette products, noting further that Defendants' "addition of the word 'bar' is irrelevant because it is descriptive of the shape of the product" [ECF No. 5 p. 12]. Plaintiff also notes that "bar" is commonly used in the e-cigarette industry to refer to bar-shaped e-cigarettes, similar to the ones marketed by Plaintiff and Defendants [ECF No. 5 p. 12]. Defendants respond by arguing that their ELFBAR mark is "a unitary term comprised of two syllables that creates a different overall impression in terms of sight, sound, meaning, and overall commercial impression" from Plaintiff's ELF mark [ECF No. 32 p. 13]. Defendants then ask the Court to reject Plaintiff's attempt to "dissect[]" its mark into component parts and instead find that the marks are dissimilar [ECF No. 32 p. 13].

Upon review of the full record, Plaintiff has met its burden to show that the ELF and ELFBAR marks are sufficiently similar, and thus, likely to lead "'to deceive the public.'" *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1260 (quoting *Saxlehner*, 179 U.S. at 33). As an initial matter,

the marks appear similar—they both begin with the same three-letter word—ELF. Though Defendants have added the addition of "bar" to their mark, the Court does not find this addition to materially lessen the similarity of the marks. The evidence presented established that "bar" is often added to the end of other words to form the names of e-cigarette products. For example, the Court heard testimony about other competitors in the e-cigarette industry such as Puff Bar, Biff Bar, Luffbar, and Geek Bar [*see, e.g.*, ECF No. 60 p 119:5–6]. Additionally, the marks are used to market nearly identical products, as more fully discussed below. Both parties utilize their respective marks to market their e-cigarette products and related accessories; they are not utilizing the marks in separate fields. This contributes to the strong possibility that Defendants' use of ELFBAR causes consumer confusion with Plaintiff's ELF mark.

In sum, when considering the marks as a whole, the Court concludes that the overall impression created by the ELF and ELFBAR marks renders the marks similar in a manner that would contribute to a likelihood of confusion in the e-cigarette market. This factor weighs in favor of finding that Plaintiff is likely to succeed in showing a likelihood of confusion, and ultimately, achieve success on the merits of its trademark infringement claim.

*iii. Similarity of Products*

The factor of similarity of products "requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling Enters., Inc.*, 192 F.3d at 1338. "[T]he test [is] not whether the goods could be distinguished . . . but whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Id.* The court must determine whether "a reasonable consumer could possibly attribute the products . . . to the same source." *Id.*

That test is satisfied here; both parties' products are similar, contributing to a likelihood of confusion among consumers about the source of the products. Plaintiff argues that both e-cigarette products have the same bar shape and appear to be "virtually identical" [ECF No. 5 pp. 12–13]. Defendants respond that the bar shape is functional and "used widely in the industry," and as such, cannot be the basis for finding the products to be similar [ECF No. 32 p. 14]. Defendants also contrast the products by stating that while Weiboli's products contain e-liquid and are disposable and ready to use upon purchase, Plaintiff's ELF products do not contain any e-liquid, are rechargeable, and must be paired with a separate mouthpiece before use [ECF No. 32 p. 14]. Although the Court heard testimony about these differences in the products [*see, e.g.*, ECF No. 46 p. 34:15–19], these differences are not significant in a way that would undermine the Court's finding that a reasonable consumer could attribute the ELF and ELFBAR products to a singular source. *See Frehling Enters., Inc.*, 192 F.3d at 1338. The shape and size of the two products are nearly identical, rendering them nearly indistinguishable to the naked eye, notwithstanding the different names attached [*Compare* ECF No. 38-2, *with* ECF No. 38-14]. The products perform the same function, allowing a consumer to vape the liquid placed inside. Thus, from the appearances of the products, they are similar such that the public could attribute them to a single source. *See Frehling Enters., Inc.*, 192 F.3d at 1338.

The Court recognizes the differences in the functions of the products, but finds that overall, a reasonable consumer could attribute both the ELF and ELFBAR products to a single source. This similarity of products contributes to the likelihood of confusion between the products.

*iv. Similarity of Retail Outlets and Customers*

The parties also sell their products in similar retail outlets and to similar customers, which contributes to a likelihood of confusion about the origin of the products. "Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendants' goods lessen

the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980). "This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enters., Inc.*, 192 F.3d at 1339. Direct competition is not required. *Id.* Here, both parties sell their products in vape shops through wholesale distributors and market them to the same customer base—individuals who use e-cigarettes.

Plaintiff argues that the parties have overlapping sales channels and the same consumers of their products [ECF No. 5 p. 13]. Defendants respond by arguing that because they do not sell their ELFBAR products through Plaintiff's website, and because Defendants use a different distribution network, the parties do not have similar retail outlets and customers [ECF No. 32 pp. 14–15; ECF No. 65 p. 21]. The evidence presented to the Court undercuts Defendants' contention of dissimilar outlets. As the record indicates, both parties advertise their products to wholesale distributors through industry magazines [*see* ECF No. 46 p. 34:11–15]. The parties then utilize the wholesale distributors to sell their products to vape shops, smoke shops, and convenience stores throughout the country [ECF No. 34 p. 24:12–19 (describing the way in which Plaintiff's products are distributed); ECF No. 60 p. 56:8–11 (describing how the e-cigarette channels of distribution work); ECF No. 60 p. 87:21–23 (describing the places where Defendants' products are sold)]. Though Defendants presented testimony that certain of Defendants' distributors had never seen Plaintiff's ELF products in the vape shops and convenience stores they had visited [ECF No. 60 pp. 62:5–9, 91:1–4], direct competition between the products is not required. *See Frehling Enters., Inc.*, 192 F.3d at 1339. On the whole, the Court finds that the parties utilize the same retail outlets—smoke shops, vape shops, and convenience stores through wholesale distributors—to sell their products.

The parties also sell their products to a similar consumer base. Though Plaintiff's products do not contain any nicotine e-liquid when sold [ECF No. 46 p. 72:15–20], both parties market and

sell their e-cigarette products to members of the public who are interested in vaping. The only difference is that consumers of Plaintiff's products can choose to vape other substances, such as essential oils and supplements in addition to nicotine [ECF No. 46 p. 72:14–15]. The main consumer base for both the ELF and ELFBAR products remains a consumer interested in vaping, though Defendants' base may be partially narrowed to consumers interested in vaping only nicotine e-liquid. This similarity in the consumer base contributes to a likelihood of confusion about the origin of the parties' products.

*v. Similarity of Advertising Media*

Both parties utilize similar advertising media—magazines marketed to wholesale distributors—to attract customers, which contributes to a likelihood of confusion about the source of the products.

The greater the similarity in the advertising methods, the greater the likelihood of confusion. *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1188 (11th Cir. 2015). "'[T]he standard is whether there is likely to be significant enough overlap in the [audience of the advertisements] that a possibility of confusion could result.'" *Fla. Int'l Univ. Bd. of Trs.*, 830 at 1262 (quoting *Frehling Enters., Inc.*, 192 F.3d at 1340).

The Court finds such an overlap exists here. Plaintiff argues that "both parties advertise their e-cigarettes online," which "supports a likelihood of confusion" [ECF No. 5 p. 13]. Defendants counter that there can be no likelihood of confusion, because Plaintiff "does not show that the parties use the same discrete types of online advertising" when Plaintiff advertises only on its own website [ECF No. 32 p. 15]. At the hearing, however, the Court was presented with additional information about the parties' advertising methods. Specifically, Defendants'

distributor witness (Haitham Shriteh, Operations Manager for Defendant Safa Goods), explained that, in the e-cigarette industry, the manufacturer (such as Plaintiff or Weiboli here) sells its product to master distributors (or distributors), who ultimately sell the products to the stores where the everyday consumer can access them [ECF No. 60 p. 56:8–11]. Plaintiff's CEO testified that they "are not legally allowed to advertise to consumers [because] the products are not acceptable to most advertising agencies" [ECF No. 46 p. 2:3–5]. Therefore, Plaintiff advertises its products to wholesale distributors in trade magazines [ECF No. 46 pp. 23:9–10, 23:22–25, 24:1–5, 24:16–19]. Defendant similarly advertises in these trade magazines [ECF No. 46 pp. 34:11–19, 35:9–17; ECF No. 38-16 (advertisement for ELFBAR product in trade show magazine)]. Though the record contains some evidence that the parties also market their products via online websites [*see, e.g.*, ECF Nos. 38-4 (screenshot of ELF product on Plaintiff's website); ECF No. 38-14 (screenshot of ELFBAR product on ELFBAR website)], the testimony establishes that a significant advertising outlet utilized by e-cigarette companies is trade magazines, which are geared toward wholesale distributors. Beyond using the same "method" of advertising (trade magazines), the testimony also showed that the parties have in fact utilized the same magazines to market their products [ECF No. 46 p. 35:9–17 (stating that the ELFBAR product was advertised in the same "magazine [Plaintiff] previously advertised [its] product in")]. This further supports a "'significant enough overlap in the [audience of the advertisements] that a possibility of confusion could result.'" *See Fla. Int'l Univ. Bd. of Trs.*, 830 at 1262 (quoting *Frehling Enters., Inc.*, 192 F.3d at 1340).

*vi. Defendants' Intent*

The next factor considers "the intent of the alleged infringer to misappropriate the proprietor's good will." *Fla. Int'l Univ. Bd. of Trustees*, 830 F.3d at 1255. "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the

plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enters., Inc.*, 192 F.3d at 1340. The Court must determine whether the alleged infringer "'had a conscious intent to capitalize on the plaintiff's business reputation, was intentionally blind, or otherwise manifested improper intent'" in adopting the mark. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1263 (quoting *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007)).

Although there is no direct evidence that Defendants specifically intended to adopt the ELF mark to derive a benefit from Plaintiff's business reputation, the Court was presented with other evidence raising an inference of improper intent on the part of Defendant Weiboli in adopting the ELFBAR mark. On this point, Plaintiff argues that Weiboli clearly manifested improper intent because it had actual knowledge of the ELF mark by July 19, 2021, when the USPTO rejected its trademark registration application—yet Weiboli, through the Defendant distributors, "proceeded to enter the U.S. market and sell its infringing ELFBAR products" [ECF No. 5 p. 14]. According to Plaintiff, this gives "rise to an inference that Defendants intended to benefit from Plaintiff's reputation to Plaintiff's detriment" [ECF No. 5 p. 14]. Defendants disagree, noting that knowledge of Plaintiff's trademark alone is not evidence of an intent to trade on Plaintiff's reputation and goodwill, pointing also to their "international portfolio of registered trademarks and pending applications for the ELFBAR mark for countries spanning multiple continents" [ECF No. 32 pp. 15–16]. Defendants also argue that Plaintiff's small sales numbers and relative lack of notoriety in the e-cigarette industry shows that Defendants could not have appropriated the ELF mark with an intent to "use [Plaintiff's] goodwill" [ECF No. 60 p. 161:1–8]. And Defendants caution that the USPTO's decision not to register the ELFBAR trademark cannot have *res judicata* effect, nor should the Court be persuaded by the decision of an examining attorney at the USPTO [ECF No. 32 p. 10].

While the Court recognizes that the USPTO's decision is not determinative of Defendant's intent to misappropriate Plaintiff's good will, the Court does find it informative as to Defendant Weiboli's knowledge and intent at the time it entered the U.S. market with its ELFBAR products. There is no dispute—at this point—that Plaintiff's sales numbers are "paltry" in comparison to the sales made by Defendants of the ELFBAR products [ECF No. 60 p. 126:13–16]. That much is true, although, as a counterpoint, Plaintiff presented testimony of its noticeably declining sales coinciding with Weiboli's entry into the U.S. market [ECF No. 46 pp. 87:22–25; *see* ECF No. 58-9 p. 6; ECF No. 58-10 p. 5 (Plaintiff's quarterly reports)]. In any event, even without direct evidence of Defendants' intentional use of the ELF mark to specifically derive a benefit from Plaintiff's business reputation, there can be no dispute that Weiboli adopted the ELFBAR mark despite the uncontested evidence that Plaintiff had a validly registered and preexisting trademark in the ELF mark—a mark which the USPTO cited in an official action as a reason to reject Weiboli's ELFBAR mark application [ECF No. 38-3]. Specifically, on July 19, 2021, Weiboli was provided with notice, through a USPTO Office Action, that its trademark application had been rejected due to a likelihood of confusion with Plaintiff's ELF Mark [ECF No. 38-3]. After acquiring this knowledge, Weiboli, through its distributors, proceeded soon after to enter the United States market to sell its ELFBAR products [*See* ECF No. 60 p. 57:15–18 (stating that Safa Goods began distributing ELFBAR products in January 2022); ECF No. 60 p. 88:10–12 (stating that Demand Vape began distributing ELFBAR products in October 2021)]. Although not conclusive, this evidence supports a finding of improper intent on the part of Defendants' "improper intent" in adopting the ELFBAR mark.

The Court is also unpersuaded by Defendants' argument that they could not have had an improper intent in adopting the mark in the United States because they have valid registrations for the mark in multiple other countries [ECF No. 32 p. 16; ECF No. 65 p. 23; *see* ECF No. 58-7].

The fact remains that Defendants were aware, *prior to* marketing their ELFBAR products in the United States, that USPTO had found a likelihood of confusion with Plaintiff's ELF mark and used that as a basis to reject Weiboli's application. Despite this knowledge, Defendants entered the United States market to sell ELFBAR e-cigarette products and proceeded to achieve great success, all the while Plaintiff's sales declined. This knowledge, the Court finds, is evidence of "improper intent" on the part of Defendants, supporting Plaintiff's showing of a likelihood of consumer confusion.

*vii. Actual Confusion*

Though Plaintiff presented a text message received by Plaintiff's CEO suggesting that one of Plaintiff's distributors had been confused by the origin of the ELFBAR products [ECF No. 38-11], the Court does not find that evidence sufficiently persuasive to establish actual confusion.

"It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion. However, such evidence is not a prerequisite, and thus it is up to individual courts to assess this factor in light of the particular facts of each case." *Frehling Enters., Inc.*, 192 F.3d at 1340. In assessing the weight of the evidence, courts consider *who* was confused and *how* they were confused. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1264. "Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight, while confusion of actual customers of a business is worthy of substantial weight." *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982) (internal citations omitted).

To establish actual confusion, Plaintiff points to a text message its CEO received from its distributor, AJ Wholesale Distributor, in June 2022, inquiring about ELFBAR and asking if Plaintiff had produced those products [ECF No. 46 pp. 39:6–12, 40:1–20; ECF No. 38-11 (text message)]. Defendants argue that this single instance of consumer confusion is insufficient to

conclude that there is likelihood of confusion to warrant a preliminary injunction [ECF No. 32 p. 17]. On this factor, the Court agrees. Though Plaintiff produces evidence that one of its distributors was confused about ELFBAR's origin and briefly thought that Plaintiff "was behind" the product [ECF No. 38-11 ("Hey are you the one behind elf bar.")], this amounts most reasonably to "short-lived confusion" on the part of the distributor. *See Safeway Stores, Inc.*, 675 F.2d at 1167. Plaintiff's CEO corrected the confusion, and Plaintiff has produced no other evidence that consumers were confused about the origin of the ELFBAR products or otherwise attributed them to Plaintiff. As such, the Court cannot conclude that Plaintiff has produced sufficient evidence of actual consumer confusion. This factor weighs against a finding that Plaintiff is likely to succeed on the merits.

### III. Irreparable Injury

Plaintiff has shown that it is likely to suffer irreparable injury in the absence of a preliminary injunction. "[A] sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985). Grounds for showing irreparable injury include "'loss of control of reputation, loss of trade, and loss of goodwill.'" *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting *Pappan Enters, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). Irreparable harm is at its peak when the victim is unable to control the nature and quality of the infringer's goods. *Id.* at 190–91. "A plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." *Id.* at 191. Plaintiff has met this standard here, even assuming that a showing

of likelihood of confusion is not alone sufficient to show irreparable injury. *See* N. *Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008).

The Court first notes that Plaintiff has produced a "sufficiently strong showing of likelihood of confusion." *See E. Remy Martin & Co., S.A.*, 756 F.2d at 1530. As discussed above, *see* Part II *supra*, the clear majority of the factors weigh in favor of finding that Plaintiff can succeed in showing a likelihood of confusion between their ELF mark and Defendants' ELFBAR mark. As such, on that basis alone, Plaintiff has shown that it is likely to suffer a substantial threat of irreparable harm in the absence of a preliminary injunction. *See E. Remy Martin & Co.*., 756 F.2d at 1530.

However, given the Eleventh Circuit's suggestion in *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227–28 (11th Cir. 2008), that the court may require a further showing of irreparable injury following the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the Court examines the other indicia of irreparable harm by Defendants' use of its mark—ultimately finding a sufficient basis to support Plaintiff's contention that it will suffer irreparable harm absent injunctive relief. *See N. Am. Med. Corp.*, 522 F.3d at 1227–28 (stating that "a recent U.S. Supreme Court case calls into question whether courts may presume irreparable harm merely because a plaintiff in an intellectual property case has demonstrated a likelihood of success on the merits" but ultimately declining to adopt a new rule on establishing irreparable injury). Specifically, Plaintiff has shown that Defendants' use of the ELFBAR mark has resulted in a loss of trade for their ELF products. Plaintiff's CEO testified that the company has seen its sales decline by more than half since the ELFBAR products were introduced into the market because customers are drawn to Defendants' product which includes free nicotine, unlike Plaintiff's product [ECF No. 46 p. 83:3–25]. This decline in sales began in 2021, soon after the ELFBAR product was introduced for sale in the United States [ECF No. 46

p. 87:20–25]. This drop in sales is reflected in Plaintiff's gross profits reported to the SEC [ECF No. 58-9 p. 6; ECF No. 58-10 p. 5]. Additionally, Plaintiff has also shown that Defendants' use of the ELFBAR mark has resulted in their inability to control the nature and quality of Defendants' goods that are being marketed and sold under the ELFBAR name. Plaintiff expressed particular concern over the ELFBAR products being marketed with nicotine e-liquid in candy and fruit flavors [ECF No. 46:61:18–20; ECF No. 54-1]. Plaintiff's ELF products, by contrast, do not contain any nicotine e-liquid, leaving it up to the consumer to choose what to use the product for [ECF No. 46 p. 72:15–20]. As Plaintiff has no affiliation with Defendants, they are unable to control or influence exactly what products are being marketed under the ELFBAR name. This results in the potential for Plaintiff to lose control over its reputation, which shows a substantial threat of irreparable harm. *See Ferrellgas Partners, L.P.*, 143 F. App'x at 191.

The Court is not persuaded by Defendants' argument that Plaintiff's purported delay in seeking the preliminary injunction belies any threat of irreparable harm. Specifically, Defendants argue that Plaintiff will not suffer immediate irreparable harm absent an injunction, because Plaintiff learned of Defendants' ELFBAR products as early as May 2022, but waited nearly five months to file the instant motion [ECF No. 32 p. 17]. While Defendants are correct that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm," *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016), Plaintiff has offered a reasonable and credible explanation for the "delay"—specifically, that Plaintiff was attempting in good faith to settle this matter without litigation. Plaintiff's counsel sent a cease-and-desist letter to Defendants in early June 2022, and then the parties engaged in settlement discussions until the instant suit was filed in October 2022 [ECF No. 34 pp. 4–5; ECF No. 38-20; ECF No. 46 p. 82:5–8]. Though there was a period of time in which Plaintiff did not seek the instant injunction, the Court does not find that period of time—

explained by Plaintiff's attempts to resolve this matter without litigation—undermines the threat of irreparable harm. Unlike in the case cited by Defendants, Plaintiff has offered a clear and reasonable explanation for its delay in filing the instant motion, which the Court credits.

The substantial threat of irreparable harm to Plaintiff resulting from Defendants' use of the ELF mark weighs in favor of granting a preliminary injunction.

**IV. Balancing of Harms**

The balance of harms weighs in favor of issuing an injunction. In deciding this factor, the Court must decide whether the weight of Plaintiff's financial harm and nonmonetary harm to its goodwill and reputation outweighs Defendants' losses arising from their inability to use Plaintiff's mark until a decision on the merits is reached. *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1227 (M.D. Fla. 2013) (citing *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001)). A party does not suffer legitimate harm when the issuance of a preliminary injunction would only prevent a party from using marks which they are not entitled to use. *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1561–62 (M.D. Fla. 1988).

Plaintiff points to the "financial harm and nonmonetary harm to its goodwill and reputation" that would be suffered should Defendants be allowed to continue marketing and selling their ELFBAR products [ECF No. 5 p. 16]. Meanwhile, Plaintiff argues, "Defendants will suffer no legitimate hardship in the event a preliminary injunction is issued, because Defendants have no right to engage in their present infringing activities and were on notice by the USPTO that their product was potentially confusing" [ECF No. 5 p. 17]. Defendants ask the Court to weigh the "substantial lost sales" and the threat to "Defendants' substantial customer relationships and goodwill with their customers nationwide" that would result should the Court issue a preliminary injunction in this matter, especially when considering that Defendants' sales "significantly dwarf" Plaintiff's sales [ECF No. 32 p. 18].

While the Court recognizes that Defendants have had considerable success in the sale of their ELFBAR products in the United States, the issuance of the preliminary injunction would prevent Defendants only from using marks which the record substantially shows they are not entitled to use. And Plaintiff has offered sufficient evidence on the flipside to support the harms (monetary and non-monetary) it will continue to suffer absent an injunction. The balance of harms weighs in favor of Plaintiff.

**V. Public Interest**

The public interest also weighs in favor of issuing a preliminary injunction to enjoin Defendants' marketing and sale of the ELFBAR products in the United States.

"[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A.*., 263 F.3d at 1304. Factors to be considered in the trademark infringement context are "the public's interest in not being confused; the public's interest in encouraging, not stifling, competition; and the broader economic implications of [the] grant of the preliminary injunction." *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1281 (N.D. Fla. 2016) (alteration in original) (internal citations and quotation marks omitted).

Plaintiff points to the likelihood of confusion caused by Defendants' use of the ELFBAR mark as the primary reason the public interest would be served by the issuance of a preliminary injunction [ECF No. 5 p. 17]. Plaintiff also points to the significant resources it has expended to market its ELF e-cigarette products and e-cigarette accessory products, adding that VPR will suffer "both financial harm and nonmonetary harm to its goodwill and reputation" [ECF No. 66 p. 25]. Defendants take the opposite view, again suggesting that the likelihood of confusion is "minimal or nonexistent" [ECF No. 32 pp. 18–19]. Defendants also presented generalized testimony at the hearing that the absence of ELFBAR products on the market could lead to harmful results when

counterfeit products that are unsafe for human consumption emerge to fill the void that would be left by a preliminary injunction [ECF No. 60 pp. 103:1-7, 109:1–5].

While health and safety issues are of paramount importance, the record does not reveal a concrete harm to such health and safety by entry of this injunction, and the fact remains that Plaintiffs have sufficiently shown that Defendants' use of the ELFBAR mark has created a likelihood of confusion with Plaintiff's ELF mark. *See* Part II, *supra*. The public has an interest in the prevention of consumer confusion in the marketplace, *Davidoff & CIE, S.A.*, 263 F.3d at 1304, and the speculation about potential counterfeit products does not move the Court to disregard that salutary public interest. As such, the Court finds that the public interest weighs in favor of granting a preliminary injunction and enjoining Defendants' use of the ELF mark.

**VI. Summation of Factors**

On the whole, and upon a full review of the extensive record, the Court finds that the four factors applicable to injunctive relief all weigh in favor of preliminarily enjoining Defendants' use of the ELFBAR mark in the United States.

**VII. Bond**

The last issue for the Court to decide is whether, as a prerequisite to the issuance of the preliminary injunction, Plaintiff should be required to post a monetary bond. Federal Rule of Civil Procedure 65(c) provides that: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the security is within the discretion of the trial court, and a court may elect to require no security to be posted at all. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). Courts will refrain from requiring a bond to be posted "when the party seeking the injunction has a high

probability of succeeding in the merits of its claim." *Univ. Books & Videos, Inc. v. Metro. Dade Cnty.,* 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999).

The parties in this case have vastly different ideas of what an appropriate bond might be in this case. Plaintiff argues that if any bond is required by the Court, it should be no more than $100,000 [ECF No. 60 p. 149:23; ECF No. 66 p. 30]. In sharp contrast, Defendants argue that only a substantial bond of $200 million would be sufficient to cover the lost profits Defendants would suffer if a preliminary injunction is issued [ECF No. 60 p. 151:9–10; ECF No. 65 p. 31]. Though the Court heard testimony on the damages that Defendants would incur as a result of the Court enjoining Defendants' sale of ELFBAR products, the Court declines to set an extraordinary bond as Defendants request. Instead, because of Plaintiff's high likelihood of success on the merits of its trademark infringement claim, the Court generally agrees with Plaintiff that any bond should be relatively modest. The Court will require, as a prerequisite for the issuance of the instant preliminary injunction, that Plaintiff shall post a bond of $500,000 in the Court's registry in accordance with Federal Rule of Civil Procedure 65(c). This figure represents a five-fold increase in Plaintiff's proposal and is reasonable under the circumstances.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunction [ECF No. 5] is **GRANTED** as specified below.
2. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them are enjoined and restrained from:
   a. Importing, distributing, advertising, marketing, or selling all ELFBAR e-cigarette products in the United States; and

b. Using VPR's ELF registered trademark, any design that looks substantially similar to VPR's ELF trademark, or any mark confusingly similar to VPR's ELF registered trademark, in connection with the importation, distribution, advertising, marketing, or sale of any e-cigarette product in the United States.

3. Pursuant to Federal Rule of Civil Procedure 65(c), and on or before **February 28, 2023**, Plaintiff shall post a bond in the amount of **Five Hundred Thousand Dollars and Zero Cents ($500,000.00)**, as payment of damages to which Defendants may be entitled in the event it is determined that this injunction is wrongful.

4. This Order shall remain in effect during the pendency of this case and until further Order of the Court.

5. Defendants' Motion to Reopen Evidentiary Hearing [ECF No. 76], filed nearly two months after the hearing, is **DENIED**. Defendants seeks to reopen the evidentiary hearing to add new testimony (oral or in declaration form) from Defendants' expert regarding a newly prepared consumer survey intended to evaluate the likelihood of confusion between Plaintiff's ELF mark and Defendants' ELFBAR mark [ECF No. 76-1]. The Court denies this request. As the expansive record and procedural history in this case indicates, the Court held two hearings on the Motion, spanning approximately nine hours [ECF Nos. 39, 52], and received into evidence numerous exhibits by both parties [ECF Nos. 38, 54, 58]. The Court also accepted post-hearing briefs on December 20, 2022, totaling an additional sixty pages of briefing on top of the fully briefed Motion [*see* ECF Nos. 65, 66]. Under these circumstances, the Court does not find a sufficient basis to expand the already developed record on the Motion.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 23rd day of February 2023.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record