NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VPR BRANDS, LP,**
*Plaintiff-Appellee*

**v.**

**SHENZHEN WEIBOLI TECHNOLOGY CO. LTD., YLSN DISTRIBUTION LLC, ECTO WORLD LLC, D&A DISTRIBUTION LLC, UNISHOW (U.S.A.), INC., SV3 LLC, KINGDOM VAPOR INC.,**
*Defendants-Appellants*

**SAFA GOODS LLC,**
*Defendant*

---

2023-1544

---

Appeal from the United States District Court for the Southern District of Florida in No. 9:22-cv-81576-AMC, Judge Aileen M. Cannon.

---

Decided: August 14, 2024

---

JOEL BENJAMIN ROTHMAN, SRIPLAW, PA, Boca Raton, FL, argued for plaintiff-appellee.

ERIC HEYER, Thompson Hine LLP, Washington, DC,

argued for defendants-appellants. Also represented by MEIXUAN LI, JOSEPH ANDREW SMITH; CARRIE A. SHUFFLEBARGER, Cincinnati, OH.

---

Before LOURIE, REYNA, and CHEN, *Circuit Judges*.

REYNA, *Circuit Judge*.

Shenzhen Weiboli Technology Co. Ltd. appeals an order of the United States District Court for the Southern District of Florida, which granted a preliminary injunction against Weiboli in a trademark infringement action. In granting the preliminary injunction, the district court concluded that, among other findings, VPR Brands, LP was likely to succeed on the merits of its trademark infringement claim against Weiboli. The district court rejected Weiboli's affirmative defense that VPR's trademark registration at issue was invalid under the "unlawful use doctrine." Weiboli appeals, contending that the district court abused its discretion by failing to adopt the unlawful use doctrine. We vacate and remand.

## BACKGROUND

VPR Brands, LP ("VPR") owns U.S. Trademark Registration No. 5,486,616, for the use of the mark "ELF" in connection with International Class 34: "Electronic cigarette lighters; Electronic cigarettes; [and] Smokeless cigarette vaporizer pipe[s]." J.A. 88. VPR markets two products under the "ELF" mark: (1) a reusable bar-shaped e-cigarette vaporizer, and (2) a high-capacity e-cigarette battery for use with refillable mouthpieces. *VPR Brands, LP v. Shenzhen Weiboli Tech. Co.*, No. 22-81576-CIV, 2023 WL 2317165, at *1 (S.D. Fla. Feb. 23, 2023) ("*Injunction Order*").

VPR sued Shenzhen Weiboli Technology Co. Ltd. ("Weiboli") in the United States District Court for the Southern District of Florida, alleging that Weiboli

infringed its "ELF" mark. Weiboli, a Chinese manufacturer of e-cigarettes, markets its e-cigarettes under the name "ELFBAR." *Id.* VPR also sued Weiboli's wholesale distributors of ELFBAR e-cigarettes in the United States. *Id.* VPR alleged that Weiboli's distribution of its ELFBAR e-cigarettes infringed VPR's "ELF" mark because it was likely to cause confusion in the marketplace. *Id.* at *2.

The day after VPR filed its original complaint, VPR moved for a preliminary injunction based primarily on its trademark infringement claim under the Lanham Act.[1] *See id.* at *2. VPR sought to enjoin Weiboli and its distributors from marketing the ELFBAR e-cigarettes or otherwise infringing VPR's "ELF" mark. *Id.*

As a defense, Weiboli argued that VPR's "ELF" mark was invalid and unenforceable under the "unlawful use doctrine," so VPR could not prevail on its infringement claim. *Id.* at *3–4. Generally, the unlawful use doctrine requires that to obtain a federal trademark registration from the United States Patent and Trademark Office ("PTO"), the use of a mark in commerce must be lawful. *See id.* at *3. According to Weiboli, VPR's ELF products constituted "new tobacco products" under the Federal Food, Drug, and Cosmetics Act ("FDCA"). *Id.* at *4 (citing 21 U.S.C. § 387j(a)(1)–(2)). To sell such products, manufacturers must obtain a pre-marketing authorization from the Food and Drug Administration ("FDA"). *Id.* (citing 21 U.S.C. §§ 331(a), 387(b)). Because VPR did not obtain the required authorization, Weiboli argued, VPR's use of the "ELF" mark was unlawful and the registration was thus invalid and unenforceable against Weiboli. *Id.*

---

[1] Although VPR later asserted patent infringement and other claims, it based its motion for a preliminary injunction on its Lanham Act claims. *Injunction Order*, 2023 WL 2317165, at *2 & n.3.

The district court conducted a two-day hearing on VPR's preliminary injunction motion. At the hearing, to support its unlawful-use defense, Weiboli presented expert testimony on the application of pertinent statutory and regulatory requirements to VPR's products, and further provided evidence of FDA's past enforcement actions concerning e-cigarettes. *See, e.g.*, J.A. 281–84 (Weiboli expert testimony on the application of pertinent requirements); J.A. 216–23 (example FDA warning letters against other e-cigarette manufacturers).

After the hearing, the district court issued an order granting VPR's preliminary injunction motion. *Injunction Order*, 2023 WL 2317165, at *1. In granting VPR's motion, the court rejected Weiboli's unlawful-use defense and declined to apply the unlawful use doctrine to bar VPR's trademark infringement claim. *Id.* at *4. Explaining its reasoning, the court first stated that the Eleventh Circuit, the circuit in which it sits, did not provide "definitive guidance" on whether to adopt the doctrine in an infringement context. *Id.* at *4–5 (citing *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1086–87 (11th Cir. 2016)). The court recognized that, in *FN Herstal*, the Eleventh Circuit "ultimately declined to adopt the [unlawful-use] defense" based on evidentiary deficiencies. *Id.* at *5. Nonetheless, the court interpreted *FN Herstal* as providing "caution signals" against adopting the doctrine in an infringement context. *Id.* The court also observed that cases involving the unlawful-use defense "yield[ed], at best, a mixed landscape." *Id.*

"[O]n the merits," the district court stated that it agreed with the proposition that "the unlawful use doctrine should not be wielded" in an infringement setting to invalidate a trademark registration. *Id.* at *6 (citing *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, No. 16-CV-00949, 2020 WL 10728951, at *6 (N.D. Ga. Jan. 10, 2020)). The court explained several considerations supporting its view. First, the court observed that this doctrine has its home in administrative proceedings before the Trademark

Trial and Appeal Board ("TTAB"), the "primary vehicle" for challenging registrations. *Id.* Second, the court noted that the FDCA does not provide a private cause of action to enforce its requirements. *Id.* Last, the court added that the FDA itself did not find VPR to be in violation of pertinent statutory or regulatory requirements. *Id.*

As to the evidentiary record, the district court acknowledged Weiboli offered relevant evidence to show VPR's use of the mark was unlawful under the FDCA. *See id.* at *4 n.10, *6. The court, however, declined to analyze Weiboli's evidence to determine whether it was sufficient to show unlawful use. *Id.* at *6. Rather, the court simply observed that such a determination "would require extrapolations and inferences from the present record," which in its view "[was] a matter best left for the FDA." *Id.*

After rejecting Weiboli's unlawful-use defense, the district court proceeded to consider the four preliminary injunction factors, finding each favored granting an injunction. *Id.* at *6, *15. The court thus granted VPR's motion for a preliminary injunction.

Weiboli appeals. We have jurisdiction under 28 U.S.C. § 1292(c)(1).

## DISCUSSION

### I.

This court reviews a grant of a preliminary injunction under the law of the regional circuit, here the Eleventh Circuit. *Nitro Leisure Prods., L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed. Cir. 2003). The Eleventh Circuit reviews the district court's grant of a preliminary injunction for abuse of discretion, reviewing underlying legal conclusions de novo and fact findings for clear error. *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270 (11th Cir. 2020). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a

determination, or makes findings of fact that are clearly erroneous." *Id.*; *see also e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .").

We defer to the law of the regional circuit when addressing substantive legal issues over which this court does not have exclusive subject matter jurisdiction. *Nitro*, 341 F.3d at 1359. "Where the regional circuit court has spoken on the subject, we must apply the law as stated." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984) (citation omitted). "Where the regional circuit court has not spoken, we need to predict how that regional circuit would have decided the issue . . . ." *Id.* (citations omitted).

A preliminary injunction, as granted by the district court here, is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Under Eleventh Circuit law, to obtain a preliminary injunction, the movant must establish: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020); *see also e.g.*, *Winter*, 555 U.S. at 20.

## II.

The critical inquiry in this appeal is whether, in granting a preliminary injunction, the district court abused its discretion in its consideration of Weiboli's affirmative defense based on the unlawful use doctrine. The district court's interpretation of Eleventh Circuit precedent concerning the unlawful-use defense is a question of law, which as noted above, we review de novo. *See Gonzalez*,

978 F.3d at 1270. We conclude that the district court committed legal error by misinterpreting the Eleventh Circuit's guidance and unreasonably rejecting Weiboli's unlawful-use defense without adequate legal or factual analysis.

A.

We begin our analysis with an overview of the unlawful use doctrine. The unlawful use doctrine originated in the administrative proceedings before the PTO. *See, e.g.*, *In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48, 1968 WL 8159, at *3–5 (T.T.A.B. 1968) (discussing origin and development of the doctrine). In *Coahoma*, a 1957 decision, the PTO canceled registrations of two trademarks used on certain insecticides because the interstate shipments of those insecticides violated the Federal Economic Poisons Act. *Coahoma Chem. Co. v. Smith*, 113 U.S.P.Q. 413, 1957 WL 7113, at *6 (Com'r Pats. & Trademarks 1957). The PTO concluded that "use of a mark in connection with unlawful shipments in interstate commerce" could not form the basis for a federal registration. *Id.* Shortly after the *Coahoma* decision, the PTO promulgated regulatory rules requiring that to obtain a registration, the use of a mark in commerce must be lawful. *See Stellar*, 1968 WL 8159, at *4; *see also* 37 C.F.R. § 2.69.

Since then, the PTO has "consistently held that, to qualify for a federal [trademark] registration, the use of a mark in commerce must be lawful." *In re PharmaCann LLC*, 123 U.S.P.Q.2d 1122, 2017 WL 2876812, at *2 (T.T.A.B. 2017) (cleaned up); *Clorox Co. v. Armour-Dial, Inc.*, 214 U.S.P.Q. 850, 1982 WL 50434, at *1 (T.T.A.B. 1982). The PTO's adoption and application of the unlawful use doctrine appears to rest on policy considerations and the equitable doctrine of unclean hands. *See, e.g.*, *Stellar*, 1968 WL 8159 at *3; *Coahoma*, 1957 WL 7113, at *6 & n.10 ("[P]roperty rights [cannot] be acquired as a result of unlawful acts[.]"); *see also Dessert Beauty, Inc. v. Fox*, 617 F.

Supp. 2d 185, 190 (S.D.N.Y. 2007) (noting that the doctrine "has its origins in the common law doctrine of 'unclean hands'"), *aff'd*, 329 F. App'x 333 (2d Cir. 2009). The doctrine aims to prevent applicants from obtaining the benefits of trademark protection if the use of a mark is unlawful. *See, e.g.*, *Satinine Società in Nome Collettivo di S.A. e M. Usellini v. P.A.B. Produits et Appareils de Beaute*, 209 U.S.P.Q. 958, 1981 WL 48126, at *10 (T.T.A.B. 1981) (Kera, M., concurring) ("[I]t would be anomalous for the [PTO] to accord recognition to the use of a mark when the use relied upon was unlawful.").

During the doctrine's near 70-year existence, few appeals have been taken from the PTO's unlawful use decisions, either to this court or district courts. *See* Robert A. Mikos, *Unauthorized and Unwise: The Lawful Use Requirement in Trademark Law*, 75 Vand. L. Rev. 161, 185–86 (2022). This court, for instance, has not had the occasion to directly address the basis for and viability of this doctrine, or the bounds of its application. In the 1957 *Coahoma* decision, from which this doctrine evolved, the PTO did not articulate a statutory basis for the doctrine. *See Coahoma*, 1957 WL 7113, at *6. On appeal to our predecessor court, the United States Court of Customs and Patent Appeals, the PTO's decision was affirmed on other grounds and the court found it unnecessary to reach the unlawful-use issue. *Smith v. Coahoma Chem. Co.*, 264 F.2d 916, 920 (CCPA 1959).[2]

---

[2] The term "unlawful use" appeared in passing in a more recent case, *Gray*. *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526 (Fed. Cir. 1987) (referencing in dictum the general principle that a registrant needed to show "lawful use in commerce"). *Gray*, however, did not involve an alleged unlawful use and thus did not present the appropriate occasion for this court to address the doctrine. *Id.*

Outside the PTO, a small number of district courts have addressed this doctrine as a basis to challenge a registration in a trademark infringement context.[3] At the appellate level, in addition to the Eleventh Circuit, three other appellate courts have visited the doctrine. The Ninth Circuit and the Tenth Circuit have recognized some form of the doctrine in infringement cases as a defense. *See Cre-Agri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (stating that "only lawful use in commerce can give rise to trademark priority" (emphasis omitted)); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000) (noting that to obtain rights to a registration, the trademark owner "needed to show the [mark] was lawfully used in commerce"). The Fifth Circuit, in contrast, "has not adopted the unlawful use doctrine." *Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 475 (5th Cir. 2021).

There remains a lack of consensus as to the statutory basis for this doctrine and the bounds of its application.[4] Pertinent questions have long been raised. In the 1981 *Satinine* decision, the PTO commented that a "very persuasive argument can be made for the proposition that there

---

[3] *See, e.g.*, *Pac-West Distrib. NV LLC v. AFAB Indus. Servs., Inc.*, 674 F. Supp. 3d 132, 139 (E.D. Pa. June 13, 2023) (collecting cases); *see also generally* Mikos, 75 Vand. L. Rev. at 188 (discussing application of the unlawful use doctrine in trademark infringement litigation).

[4] *See, e.g.*, *Perry*, 994 F.3d at 475 (summarily declining to adopt the doctrine, noting that the court did not previously adopt it); *United Phosphorus*, 205 F.3d at 1225 *CreAgri*, 474 F.3d at 630 (noting that "it is doubtful that the trademark statute" would recognize unlawful use); *see also generally* Mikos, 75 Vand. L. Rev. at 185–88 (discussing lack of judicial scrutiny of PTO's statutory authority to require lawful use).

is in fact no statutory basis" for the unlawful use doctrine. *Satinine*, 1981 WL 48126, at *6 n.2. Recently, a district court questioned whether the Lanham Act contains a general "lawful use" requirement for registration.[5] Regarding the scope of its application, this doctrine does not apply to every violation of every federal law to justify denial of trademark rights under the Lanham Act. The PTO generally requires that only previously found non-compliance or "per se violation of a federal law" would trigger the unlawful doctrine. *See, e.g.*, *PharmaCann*, 2017 WL 2876812, at *3. Given the myriad regulatory acts, however, it remains unclear what types of statutory and regulatory non-compliance the PTO may assess in connection with this doctrine. *See generally e.g.*, 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:123 (5th ed. 2024).

These and other questions surrounding this PTO-created doctrine remain largely unanswered. Relevant here, pertinent inquiries further include whether the application of this doctrine in an infringement context would produce a different analysis than that in the administrative setting. As discussed above, circuits have expressed different views.

---

[5] As the *Pac-West* court noted, Section 1 of the Lanham Act requires that an applicant for a registration must "specify that . . . [a] mark must be *in use in commerce*," not in "*lawful*" use in commerce. *Pac-West*, 674 F. Supp. 3d at 140 (citing 15 U.S.C. § 1051(a)(3)(C)); *see also* 15 U.S.C. § 1127 (defining "in use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark"). Although the term "lawful use" appears elsewhere in the Lanham Act, in the *Pac-West* court's view, it should not be read into Section 1 or as a "general requirement" for registration throughout the Lanham Act. *See Pac-West*, 674 F. Supp. 3d at 140–42.

B.

The Eleventh Circuit is one of the few circuit courts to have addressed and considered the application of the doctrine. In *FN Herstal*, the accused infringer, Clyde Armory, appealed from the district court's summary judgment ruling that precluded it from pursuing its unlawful-use defense at trial. *FN Herstal*, 838 F.3d at 1086. The Eleventh Circuit first recognized the origin of the unlawful use doctrine in the administrative setting, noting that "the TTAB interpret[ed] the 'use in commerce' requirement to mean 'lawful' use." *Id.* at 1086–87.

The Eleventh Circuit then reviewed in detail the PTO's unlawful-use decisions, and the evidentiary requirements one must satisfy to oppose or cancel a registration based on unlawful use. *Id.* Based on this review, the Eleventh Circuit explained, a use is unlawful if (1) a court or agency with competent jurisdiction has previously found a violation, or (2) "there has been a per se violation of a statute regulating the sale of a party's goods." *Id.* at 1087 (citing *Kellogg Co. v. New Generation Foods, Inc.*, 6 U.S.P.Q.2d 2045, 2047, 1988 WL 252503, at *3 (T.T.A.B. 1988)). According to the Eleventh Circuit, to assert a defense based on the doctrine, one "must establish that it applies by clear and convincing evidence." *Id.* And for the doctrine to apply, there must be a "nexus" between the use of the mark at issue and the alleged violation, and the violation must be "material." *Id.* "To be material," the court continued, "the violation must be of 'such gravity and significance that the usage must be considered unlawful . . . .'" *Id.* (quoting *Gen. Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, 1274, 1992 WL 296518, at *3 (T.T.A.B. 1992)).

Applying these requirements, the Eleventh Circuit affirmed the district court's rejection of Clyde Armory's unlawful-use defense based on evidentiary deficiencies. The court concluded that it "need not [adopt the doctrine] today because even if [it] were to adopt it," Clyde Armory failed

to establish a sufficient evidentiary showing of a qualifying violation. *Id.* In reaching this conclusion, the Eleventh Circuit reviewed the statutory and regulatory requirements that the trademark owner allegedly violated, and further reviewed Clyde Armory's proffered evidence. *Id.* at 1087–88. The court determined that the evidence failed to show the trademark owner's advertising activities constituted a per se violation of the cited regulations, and it also failed to show the alleged statutory violation was a "material" one. *Id.* at 1088. Thus, to the Eleventh Circuit, Clyde Armory failed to establish, under the clear and convincing standard, a sufficient showing of unlawful use to justify denial of the trademark owner's trademark rights.

The Eleventh Circuit's refusal to adopt the doctrine based on evidentiary deficiencies does not support the conclusion that the Eleventh Circuit would reject the doctrine regardless of the circumstances. To the extent *FN Herstal* did not provide a "positive inclination" towards adopting the doctrine, the Eleventh Circuit did not show any "positive inclination" towards rejecting it. *See Injunction Order*, 2023 WL 2317165, at *5. As shown above, after a careful review of the PTO's unlawful-use decisions and the accompanying evidentiary requirements, the Eleventh Circuit *applied* those requirements to analyze the record evidence Clyde Armory proffered. That is, the court not only recognized potential applicability of the doctrine in an infringement setting, but also set out what an accused infringer must show to succeed on an unlawful-use defense. The Eleventh Circuit ultimately fell short of affirmatively adopting the doctrine. It "need not do so," as the court stated, because Clyde Armory's evidence failed to show a qualifying "material" violation. *Id.* at 1087–88.

Thus, because the factual circumstances in *FN Herstal* did not warrant further examination of the doctrine to determine whether it was to be adopted, the Eleventh Circuit left it open for another day. In doing so, the Eleventh Circuit entrusted a court to, in future appropriate

circumstances, conduct pertinent inquiries and determine whether to adopt the doctrine and examine its scope of application.

The district court here misread the Eleventh Circuit's decision in *FN Herstal* as "caution signals" *against* adopting the doctrine in an infringement context. *Injunction Order*, 2023 WL 2317165, at *5. The district court also misread certain observations of the Eleventh Circuit reviewing the doctrine's application in the administrative setting as supporting a rejection of this doctrine in an infringement context. *Id.* at *6. That was error and a misunderstanding of the law.

C.

Proceeding from its misreading of the Eleventh Circuit's guidance, the district court rejected Weiboli's unlawful-use defense in this case. The court determined that "the unlawful use doctrine should not be wielded to do what [Weiboli] seek[s] in this infringement action—i.e., to essentially strip Plaintiff of its trademark property interest, without an independent basis to seek cancellation of Plaintiff's mark." *Id.* To the district court, the unlawful use doctrine cannot form the basis to challenge a registration in an infringement context, whatever the circumstances. We find the district court's legal determinations conclusory and its factual analysis deficient.

The district court's blanket rejection of the unlawful-use defense rests on its misreading of the Eleventh Circuit's guidance. *See id.* As discussed above, the Eleventh Circuit's discussion in *FN Herstal* does not support such a blanket rejection regardless of the circumstances. Rather, the Eleventh Circuit left open the question of whether to adopt the doctrine under circumstances that warrant further analysis than what the facts in *FN Herstal* called for.

Departing from the Eleventh Circuit's guidance, the district court did not evaluate whether the circumstances

here present the appropriate occasion to address questions the Eleventh Circuit left open and if so, proceed to address those questions. Here, the district court did not, as the Eleventh Circuit did in *FN Herstal*, assess the evidentiary basis asserted by Weiboli to support its defense. *Compare id.*, *with FN Herstal*, 838 F.3d at 1087–88. The court did not review relevant FDA statutory or regulatory requirements Weiboli cited, or their applicability to VPR's products at issue. Indeed, the court declined to determine whether Weiboli's evidence sufficed to show VPR was non-compliant. *Injunction Order*, 2023 WL 2317165, at *6 (concluding that a determination as to VPR's non-compliance "is a matter best left for the FDA"). This court, sitting on appeal, is not tasked to weigh the sufficiency of the evidence presented before the district court, make factual findings in the first instance, or guess at determinations the district court left unmade. *See, e.g.*, *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (noting that appellate court's "function is not to decide factual issues *de novo*").

Because the district court erred in its conclusory rejection of Weiboli's unlawful-use defense, its consequent grant of the preliminary injunction cannot stand. As the district court recognized, Weiboli's unlawful-use defense "goes to the merits of [VPR's] trademark rights," absent which VPR's infringement claim would necessarily fail. *See Injunction Order*, 2023 WL 2317165, at *3. The court's rejection of Weiboli's defense thus directly affected its assessment of VPR's likelihood to succeed on its infringement claim, a prerequisite to a grant of injunctive relief.[6]

---

[6] Weiboli focuses its challenge in this appeal on the district court's refusal to adopt the unlawful use doctrine and its effect on the court's assessment of the likelihood of success factor. *See, e.g.*, Appellant Br. 2, 5, 10.

To be clear, our decision today does not predetermine whether the district court must adopt the unlawful use doctrine or the scope of its application as pertinent here. Nor does our decision predetermine whether Weiboli's unlawful-use defense in this case survives at the preliminary injunction or a later stage. The district court is entrusted, consistent with this decision, to reconsider all pertinent issues and reevaluate VPR's motion for a preliminary injunction.

Accordingly, we vacate the district court's grant of a preliminary injunction based on VPR's trademark infringement claim. We remand this case to the district court to reconsider Weiboli's unlawful-use defense in a manner consistent with our decision and reevaluate VPR's motion for a preliminary injunction.

## CONCLUSION

We have considered VPR's remaining arguments and find them unpersuasive. The district court abused its discretion by misinterpreting the Eleventh Circuit's guidance and by unreasonably rejecting Weibioli's unlawful-use defense without adequate legal or factual analysis. We thus vacate the district court's grant of VPR's motion for a

---

Nonetheless, the district court's erroneous assessment of Weiboli's unlawful-use defense and in turn, the likelihood of success factor, potentially influenced its consideration of the other preliminary injunction factors. *See, e.g.*, *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) (discussing the influence of the evaluation of the likelihood success factor on the evaluation of other factors). To the extent the district court's findings on the other preliminary injunction factors were tainted by its assessment of VPR's likelihood of success, those findings also warrant reconsideration. *See id.*

preliminary injunction and remand the case to the court for further proceedings consistent with this decision.

**VACATED AND REMANDED**

COSTS

Costs against Appellee.